**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
CHRISTINA KIZER,

                          Plaintiff,

                                                 **REPORT &**
                                        **RECOMMENDATION**

              -against -                           CV 12-5387 (JS) (AKT)

ABERCROMBIE & FITCH CO.,
ABERCROMBIE & FITCH STORES, INC., and
ABERCROMBIE & FITCH TRADING CO.,
doing business as Abercrombie and Fitch
doing business as Hollister and Ruehl,

                         Defendants.
------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.       P̲R̲E̲L̲I̲M̲I̲N̲A̲R̲Y̲ S̲T̲A̲T̲E̲M̲E̲N̲T̲

       Christina Kizer ("Plaintiff") brings this employment discrimination and wage and hour

action against her former employer Abercrombie & Fitch Co., Abercrombie & Fitch Stores, Inc.,

and Abercrombie & Fitch Trading Co. (collectively, the "Defendants"), pursuant to 42 U.S.C.

§ 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human

Rights Law, the New York City Human Rights Law, the Fair Labor Standards Act, and the New

York Labor Law.  *See generally* Am. Compl. [DE 7].  Plaintiff alleges that Defendants

discriminated against her in the terms and conditions of her employment and subjected her to a

hostile work environment on the basis of her race.  Based on those allegations, Plaintiff contends

that she (1) was unlawfully retaliated against by the Defendants for opposing discrimination, and

(2) was constructively terminated.  In addition, Plaintiff maintains that Defendants misclassified

her as an exempt employee under the federal and state wage and hour laws, thereby depriving her of lawfully earned overtime compensation.  Plaintiff further seeks to recover damages for the emotional and mental distress she sustained as a result of Defendants' actions.

Presently before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint based on Plaintiff's failure to prosecute as well as her failure to comply with this Court's Orders.  On April 12, 2016, Judge Seybert referred Defendants' motion to this Court for a Report and Recommendation as to whether the motion should be granted.  *See* DE 39.  For the reasons that follow, the Court recommends to Judge Seybert that Defendants' motion to dismiss be DENIED.

## II.   BACKGROUND[1]

This case was originally assigned to United States Magistrate Judge E. Thomas Boyle.  Judge Boyle approved the parties' proposed joint discovery plan in an Electronic Order dated March 19, 2013 and set the final conference for March 5, 2014.  Upon Judge Boyle's retirement, the case was reassigned to this Court.  *See* Electronic Order of the Clerk's Office dated July 17, 2013.  This Court then set a conference to transition the parties.  *See* Electronic Order of August 26, 2013.

### A.   Relevant Procedural History

#### 1.   *August 30, 2013 Discovery Status Conference*

This Court initially met with the parties on August 30, 2013 to ascertain the status of discovery.  *See* DE 17.  After discussion with counsel for both parties, including their request for an extension of the September 6, 2013 discovery deadline, the Court issued a Final Scheduling

Order as follows:  (1) all fact discovery was to be completed by September 30, 2013; (2) the deadline to serve expert report(s) and all expert disclosures required under Rule 26 for any party utilizing an expert in its case-in-chief was set for October 31, 2013; (3) the deadline to serve rebuttal expert report(s) and expert disclosures was set at December 11, 2013; (4) all expert depositions were to be completed by January 6, 2014; (5) any letter request for a pre-motion conference to Judge Seybert for purposes of making a summary judgment motion was to be filed by February 14, 2014; (6) the Proposed Joint Pre-Trial Order was to be filed on ECF by March 18, 2014; and (7) the Pre-Trial Conference was scheduled for March 25, 2014 at 11 a.m.

### 2. *December 23, 2013 Oral Argument on Plaintiff's Motion Seeking an Extension of Time to Complete Discovery*

Subsequently, the parties appeared before the Court for oral argument on December 23, 2013 to address Plaintiff's motion for a further extension of time to identify an expert witness — a request which was opposed by the Defendants.  *See* DE 22.  Although Plaintiff's counsel was directed to identify an expert witness by September 16, 2013, *see* DE 17 ¶ 3, counsel moved to extend this deadline on October 29, 2013.  DE 22 ¶ 1.  Plaintiff's Counsel explained that the late request was based on Plaintiff's testimony, disclosing for the first time on September 18, 2013, that she became "depressed" as a result of Defendants' actions during her employment.  *Id.* Counsel thereafter attempted to retain an expert witness to address this claim.  *Id.*  That process was also delayed due to the desired expert's unavailability as well as Plaintiff's unforeseen admission to the hospital for surgery.  *Id.*; *see also* DE 18 at 1.

---

[1]     In light of the fact that Defendants' motion to dismiss is made solely on procedural grounds and does not otherwise attack the legal sufficiency of Plaintiff's Amended Complaint, the Court will dispense with a recitation of the background facts of this case.

Given the foregoing reasons for the delay, the Court found that Plaintiff failed to demonstrate "good cause" for making the extension request five weeks after the deadline had elapsed.      DE 22 ¶ 1.  The Court found "no reason why Plaintiff's counsel could not identify an expert in the more than one year period since the Complaint was filed" if counsel had properly vetted his client.  *Id*.  The Court advised Plaintiff's counsel that "good cause under Second Circuit case law requires a showing of unforeseeable circumstances which necessitate an extension of the scheduling order."  *Id*.  Plaintiff failed to make such a showing.  *Id*.

Notwithstanding the failure to demonstrate good cause, the Court granted, in part, and denied, in part, Plaintiff's motion to extend discovery.  *Id*. ¶ 2.  The Court issued the following ruling from the bench:

> …[N]o trial date has been set in this case…under the five factors I have to look at to determine whether or not to extend discovery. Although there is some prejudice here to the defendants, I am compelled, I believe, under the existing case law to allow this expert discovery to go forward but certain things are to be made very, very clear here.
>
> First of all, I am going to give you a date.  I don't care what you've served on them already.  Anything that's a new factual assertion you better get a hold of your expert and get rid of it.  No new facts come into an expert's report here.  Discovery was closed.  He is bound by what's in her deposition.
>
> And so, whatever report you think you are going to use as a final report here, **it better be amended to take out those new facts because I am not reopening fact discovery**…
>
> ***
>
> Secondly, the report is to be served no later than January 14th and I will not extend that date.
>
> Third, to the extent that defendants believe they will now need to take that expert's deposition, they are not going to be required to pay for the time or the deposition. . . .

4

DE 24 at 21-22 (emphasis added).  The Court further directed that any rebuttal report prepared

by Defendants must be served no later than February 28, 2014.  *Id*. at 22.  The Court noted that

the February 28, 2014 deadline to serve a rebuttal report would be subject to review in the event

that Defendants' expert desired to conduct a Rule 35 exam of the Plaintiff.  *Id*.  Finally, upon

Defendants' request, the Court granted Defendants leave to re-open Plaintiff's deposition solely

on the issue of emotional distress damages.  *Id*. at 23.  To the extent that the Defendants sought

to depose the Plaintiff's expert, the Court ordered that Plaintiff would be liable for the expert's

fee for the deposition as well as the transcript.  *Id*. at 24-25.  These rulings were memorialized in

the Court's December 23, 2013 Order.  *See* DE 22 ¶ 2.

### 3.    *January 21, 2014 Telephone Status Conference*

The parties reconvened for a Telephone Status Conference with the Court on January

21, 2014.  *See* DE 23.  The conference was originally scheduled to allow Defendants' counsel to

confirm whether Defendants intended to conduct a Rule 35 exam of the Plaintiff.  *Id*. ¶ 1.

However, the Court noted that "[s]ince the parties' last appearance, a dispute has arisen . . .

concerning the adequacy of Plaintiff's December 11, 2013 expert [r]eport."  *Id*. (citing Defs.'

Mot. to Strike [DE 20]).  The Court pointed out that in light of the disagreement between the

parties about what occurred during the December 23, 2013 oral argument, "the Court is directing

that the parties make arrangements to order a copy of the transcript from that oral argument and

provide a copy to the Court," the cost of which is to be "borne equally by the parties."  *Id*.

Finally, the Court held that "[a]ny putative Rule 35 exam by the Defendants is stayed pending

the Court's decision on the motion to strike Plaintiff's December 11, 2013 expert report

[DE 20]."  *Id*. ¶ 2.

### 4.     *February 12, 2014 Joint Motion to Stay Case Deadlines*

In a joint letter motion filed on February 12, 2014, the parties requested that the Court

stay all pre-trial deadlines set forth in the Court's Final Scheduling Order pending the resolution

of Defendants' motion to strike and preclude.  *See* DE 25.  The Court granted the motion on

February 13, 2014 and stayed all remaining discovery deadlines without date until the Court

issued a ruling on Defendants' pending motion.  *See* February 13, 2014 Electronic Order.

### 5.     *September 30, 2014 Order Regarding Defendants' Motion to Strike*

On September 30, 2014, the Court issued its decision regarding Defendants' motion

to strike Plaintiff's December 11, 2013 expert report.  *See generally* DE 29.  The Court initially

pointed out that "neither party has provided the Court with a copy of the expert report at issue."

DE 29 at 12.  In addition, the Court stated:

> To the extent that Plaintiff argues that her December 11, 2013 expert report was in compliance with the Court's Order, counsel had an obligation to notify the Court accordingly. The purpose of the December 23, 2013 Order was to provide Plaintiff with additional time to serve a compliant expert report, based on the oral argument during which Defendants contended that the December 11, 2013 report contained new facts. Plaintiff was granted leave to re-open discovery and to serve her expert report no later than January 14, 2014. The Court directed Plaintiff to amend that report to the extent it contained new facts. If Plaintiff intended to rely upon that earlier December 11, 2013 report without revision (which it appears she does), Plaintiff's counsel had the obligation to notify the Court prior to January 14, 2014 and to provide some explanation as to how the report was in compliance with the Court's Order.
>
> ***
>
> Given the track record of the Plaintiff during discovery in this case, the Court has a genuine concern with the content of Plaintiff's expert report. However, it is impossible for the Court to make any findings here in the absence of the actual report itself. Plaintiff's counsel is directed to provide the Court forthwith with a clear copy

6

of the expert report. Defendants' counsel is directed to provide the Court forthwith with a copy of Plaintiff's deposition transcript. Defendants' counsel is further directed to provide the Court with a highlighted copy of Plaintiffs' expert report, pointing out those passages which Defendants contend address "new facts." The highlighted report is to be provided to the Court within ten (10) days. The Court will give its immediate attention to this matter and will issue a further decision once the materials are received.

DE 29 at 12-13. As such, the Court denied Defendants' motion, without prejudice, pending the parties' compliance with the directives set forth in the Court's Order. DE 22 at 13. Further, the Court stated that the "February 13, 2014 stay of the Final Scheduling Order shall remain in effect until the Court renders a further decision on Plaintiff's expert report." *Id.*

### 6.    *Defendants' Motion to Dismiss and Judge Seybert's Referral*

On December 2, 2015, Defendants filed a motion to dismiss Plaintiff's Amended Complaint based on Plaintiff's alleged failure to prosecute as well her failure to comply with this Court's prior Orders. *See* DE 33. Thereafter, on December 16, 2015, Plaintiff filed her opposition and on December 23, 2015 Defendants' filed their reply.[2] On April 12, 2016, Judge Seybert referred Defendants' motion to dismiss to the undersigned for a Report and Recommendation as to whether Defendants' motion should be granted, and if so, what if any relief should be awarded. *See* DE 39. The Court now turns to the instant motion.

---

[2]    The Court notes that on December 2, 2015, Plaintiff's counsel filed a letter in opposition to Defendants' motion to dismiss. *See* DE 34. On December 7, 2015, Defendants' filed a letter in reply noting, among other things, that Plaintiff's letter in opposition was improper in light of the procedural posture of Defendants' motion. *See* DE 34. Thereafter, Plaintiff filed a formal memorandum in opposition to Defendants' motion pursuant to the briefing deadlines set forth in Local Civil Rule 6.1(b). In light of the fact that both Plaintiff's letter opposition [DE 34] as well as Defendants' reply [DE 35] to Plaintiff's letter were both improperly filed in light of the procedural posture of Defendants' motion — which was filed on notice pursuant to the Federal

### III.     DEFENDANTS' MOTION TO DISMISS

#### A.     The Parties' Motion Papers

##### 1.     *Defendants' Moving Papers*

Defendants assert that Plaintiff, through her counsel, "has repeatedly failed to comply with this Court's Orders and deadlines . . . [and that] [t]heir repeated failures to comply with this Court's Orders or prosecute this case . . . has prejudiced [Defendants] and inhibited its ability to defend this action."  Defendants' Memorandum of Law in Support of Motion to Dismiss for Failure to Prosecute Claims and Comply with Court Orders ("Defs.' Mem.") at 1.  Specifically, Defendants assert that, applying the 5 factor test utilized in this Circuit when analyzing a motion to dismiss for failure to prosecute under to Rule 41(b), the Court must conclude:  (1) "Plaintiff's noncompliance with the Court's Order and failure to prosecute her case has resulted in significant delays – most recently a delay of 14 months;" (2) "Plaintiff has [] been given fair warning that it needed to timely comply with this Court's Order's;" (3) Defendants "have been prejudiced by Plaintiff's delay . . . as witnesses with relevant information have changed positions and left [Defendants'] employ;" (4) Plaintiff has caused an unnecessary expenditure of judicial resources; and (5) monetary sanctions are an insufficient remedy in light of Plaintiff's conduct. *Id*. at 6-8.

##### 2.     *Plaintiff's Opposition*

In her response, Plaintiff asserts that "Defendants primarily base their motion on two facially flawed arguments — first, that Plaintiff failed to comply with the September 30, 2014 Order by not providing a copy of the expert report . . . [and] [s]econd, that Plaintiff has made no

---

Rules — the Court declines to consider the information and arguments set forth in either filing and both of these letters are rejected.

attempt to prosecute this action. . . ."  Plaintiff's Memorandum of Law in Opposition to

Defendants' Motion to Dismiss for Failure to Prosecute Claims and Comply with Court Orders

("Pl.'s Opp'n") at 2.  Specifically, Plaintiff argues that:  (1) "the case is currently stayed and the

Plaintiff did not cause the delay of the past fourteen months;" (2) "Plaintiff was never expressly

warned that [] her case would be dismissed for failing to timely comply with the Court's

September 30, 2014 Order;" (3) "there is no evidence in the record that the delay has caused any

prejudice to the Defendants . . . and there are no indications that the delay increased the

Defendants' litigation costs or affected their likelihood of success on [the] merits;" (4) there is no

evidence that any of Plaintiff's conduct has caused a negative impact on court congestion that

would warrant dismissal; and (5) "[d]ismissing Plaintiff's claims with prejudice is an extreme

remedy that is unwarranted here . . . [since] [g]iven the three-year statute of limitations . . .

Plaintiff would be unable to refile should her claims be dismissed." *Id*. at 5-9.  In sum, Plaintiff

asserts that she "has diligently prosecuted her case over the past two years by filing her

Complaint, sending Rule 26 Initial Disclosures, sending discovery demands, sending discovery

responses, conducting depositions and appearing for conferences" and that in any event "it would

be ludicrous to penalize Plaintiff for lack of prosecution while the case is stayed and while the

pending application and opposition is under the Court's review."  *Id*. at 5.

### 3.    *Defendants' Reply*

In their reply, Defendants contend that "[t]he Court did not stay the case in its entirety

[and] Plaintiff has remained fully obligated to prosecute this case and comply with the Court's

Orders" [and that] [t]he Court's adjournment of certain deadlines in its February 13, 2014 Order

does not excuse Plaintiff's failure."  Defendants' Reply in Support of Motion to Dismiss for

Failure to Prosecute Claims and Comply with Court Orders ("Defs.' Reply") at 2.  In addition,

Defendants maintain that Plaintiff failed to comply with the Court's September 30, 2014 Order by failing to file a clean copy of their expert report. *Id.* at 3. Further, Defendants reiterate their arguments that:  (1) Plaintiff's conduct has "significantly delayed this case;" (2) "Plaintiff has been given fair warning that her case could be dismissed;" (3) Defendants "ha[ve] been prejudiced;" (4) "Plaintiff has wasted the Court's resources by repeatedly failing to comply with the Court's Orders and prosecute this case;" and (5) "[d]ismissal of Plaintiff's case is warranted . . . [since] [g]iven Plaintiff's pattern of behavior, merely giving Plaintiff additional warnings or issuing monetary sanctions will be insufficient." *Id.* at 5-9.

### B.     Standard of Review

Federal Rule of Civil Procedure 41(b) states, in pertinent part, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  The court has inherent authority under Rule 41(b) to dismiss a complaint for failure to comply with a court order, "treating the noncompliance as a failure to prosecute."  *Coleman v. Trader Joe's Corp.*, No. CV 10-5404, 2011 WL 6182323, at *3 (E.D.N.Y. Nov. 18, 2011), *report and recommendation adopted*, 2011 WL 6205490 (E.D.N.Y. Dec. 13, 2011), *aff'd*, 513 F. App'x 49 (2d Cir. 2013); *Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995); *see also Chambers v. NASCO, Inc*., 501 U.S. 32, 49, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).  The underlying rationale supporting dismissal under Rule 41(b) is "the failure of plaintiff in his duty to process his case diligently.  *See Coleman*, 2011 WL 6182323, at *3 (citing *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir.1982)).

Although such a decision is within the discretion of the district court, dismissal under Rule 41(b) has been deemed "a harsh remedy to be utilized only in extreme situations." *Harding v. Fed. Reserve Bank of N.Y.*, 707 F.2d 46, 50 (2d Cir. 1983) (quoting *Theilmann v. Rutland*

*Hosp. Inc.*, 455 F.2d 853, 855 (2d Cir. 1972)); *see Paige v. Lacoste*, No. 10-CV-3356, 2014 WL 4804866, at *9 (E.D.N.Y. Sept. 26, 2014); *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (recognizing that dismissal is a "harsh" remedy that should be imposed only in "extreme" situations and that when considering whether to dismiss an action the entire record must be taken into account).  Notwithstanding this cautionary guidance, "in appropriate cases, dismissal must be available, 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'"  *Nolan v. Primagency, Inc.*, No. 07 CIV. 134, 2008 WL 1758644, at *2 (S.D.N.Y. Apr. 16, 2008), *aff'd*, 344 F. App'x 693 (2d Cir. 2009) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)); *see Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) ("[I]n this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where . . . they are clearly warranted."); *McCorkle v. Sarter*, No. 04-CV-4500, 2006 WL 2334041, at *1 (E.D.N.Y. Aug. 9, 2006) ("[T]he authority to invoke [the sanction of dismissal] for failure to prosecute is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts." (quoting *Lyell Theatre Corp .*, 682 F.2d at 42).

In determining whether a case should be dismissed based upon plaintiff's failure to prosecute, the following factors must be considered:  "(1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser

sanctions.  *Paige*, 2014 WL 4804866, at *10 (quoting *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004); *see Lewis v. Frayne*, 595 F. App'x 35, 36 (2d Cir. 2014); *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014); *Brown v. Cty. of Nassau*, No. 14-CV-0247, 2015 WL 1535713, at *2 (E.D.N.Y. Apr. 6, 2015).  When applying this test, "no one factor is dispositive."  *Nolan*, 2008 WL 1758644, at *3; *see Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 194 (2d Cir. 1999).

### C.    Discussion

#### 1.    *Application of the Rule 41(b) Factors*

##### i.    **Length of the Delay**

When analyzing the first factor, the Court must consider both "whether the failures to prosecute were those of the plaintiff" and "whether these failures were of significant duration."  *Paige*, 2014 WL 4804866, at *10 (quoting *Norden Sys., Inc.*, 375 F.3d at 254); *see Nolan*, 2008 WL 1758644, at *3.  In addition, the Court should also take into account "whether any of the delays are attributable to defendant."  *Nolan*, 2008 WL 1758644, at *3 (citing *Jackson v. City of New York*, 22 F.3d 71, 75 (2d Cir. 1994)).

The Court points out that Plaintiff's counsel has not exercised the requisite diligence expected in the prosecution of this case due, in part, to Plaintiff's noncompliance with the Court's discovery orders.  For instance, during the December 23, 2013 oral argument of Plaintiff's motion seeking an extension of time to identify her expert, the Court observed that despite being given an "absolute deadline," Plaintiff's counsel failed to identify her expert by that date and "didn't come back to [the Court] before the deadline expired."  DE 24 at 4.  Instead, counsel "waited five weeks to write to the Court to tell me you didn't do what you were supposed to have done at least six weeks earlier."  *Id*.  Although the Court ultimately granted

Plaintiff's motion, in part, it admonished Plaintiff's counsel, stating that it was "appalled with the way this [issue] has been handled. . . ." *Id.* at 21. Further, despite the fact that the Court set a deadline of January 14, 2014 for Plaintiff's submission of a revised expert report purged of any new facts gleaned after the close of discovery, Plaintiff's counsel failed to submit the required amended report by the deadline and instead appeared to simply rely on her earlier December 11, 2013 report. *See* DE 29 at 12.

The Court explicitly noted in its September 30, 2014 Order that it had provided Plaintiff with additional time to serve a compliant expert report and to the extent "Plaintiff intended to rely upon the earlier . . . report without revision . . . , *Plaintiff's counsel had an obligation to notify the Court* prior to January 14, 2014 and to provide some explanation as to how the report was in compliance. . . ." *Id.* (emphasis added). In addition, in its September 30, 2014 Order, the Court stated that it had a "genuine concern" regarding the content of Plaintiff's expert report and directed Plaintiff' counsel to "provide the Court forthwith with a clear copy of the expert report." *Id.* at 13. Plaintiff's counsel failed to comply with this directive as well until the instant motion practice ensued, at which time counsel filed the report as an attachment to the memorandum in opposition to Defendants' motion which was filed on December 16, 2015 — over one year after the Court issued its September 30, 2014 Order. Likewise, instead of acknowledging such noncompliance, Plaintiff's counsel offers unpersuasive excuses and seeks to shift the blame and burden to Defendants, stating that: (1) "[a]t no time over the past fourteen months did the Defendants ask Plaintiff whether the Expert Report was in fact submitted;" and (2) "[i]n any event, on October 7, 2014, the *Defendant* provided the Court with all the materials requested in the September 30, 2014 Order including the Plaintiff's Expert Report." Pl.'s Opp'n at 6 (emphasis added). According to Plaintiff's counsel, the mere fact that Defendants forwarded a

13

highlighted report to the Court — as part of a specific directive in its September 30, 2014 Order — somehow absolved Plaintiff's counsel of his responsibility to comply with a similar directive in that same Order.  It did not.  Court imposed directives and deadlines are not advisory and adherence is required.  As such, to the extent Plaintiff's counsel asserts that "whether or not Plaintiff, in fact, mailed the expert report is immaterial," that conclusion is mistaken one.  *Id*. at 4.  Similarly, to the extent Plaintiff relies on the fact that a stay of the *discovery deadlines* — in place since February 13, 2014 — somehow relieved Plaintiff's counsel of his responsibility to timely submit a clean copy of Plaintiff's expert report to the Court (in accordance with the Court's September 30, 2014 Order), such reliance is likewise unavailing.

Based upon the above factors, the Court finds that the delays in moving this case forward prior to the Court's February 13, 2014 Order were directly attributable to Plaintiff's lack of diligence in adhering to Court imposed deadlines.  Any such delay subsequent to the issuance of the Court's September 30, 2014 Order is likewise due primarily to the lack of timely compliance by Plaintiff's counsel with that Order.  To take the position that noncompliance was "immaterial," Pl.'s Opp'n at 6, is disingenuous inasmuch as it contravenes the plain language of the Court's Order.  Even were the Court to overlook much of the delay caused by counsel's noncompliance with the Court's September 30, 2014 Order, over one year elapsed between the filing of the Complaint and the identification of Plaintiff's expert, *see* DE 22.  This lack of timeliness itself necessitated further delays with respect to the pendency of expert discovery.

The above circumstances weigh in favor of dismissal as to the delay factor. *See Embuscado v. D.C. Comics*, 347 F. App'x 700, 701 (2d Cir. Oct. 1, 2009 (summary order) (affirming dismissal due to plaintiff's violation of court's orders over a three month period); *Brown*, 2015 WL 1535713, at *3 (finding that plaintiff's failure to comply with a court order for

14

over two months and failure to provide defendant's counsel with discovery for over four months

weighed in favor of dismissal); *Jamison v. City of New York*, No. 07-CV-1312, 2009 WL

1346832, at *2 (E.D.N.Y. May 5, 2009) (recognizing that plaintiff's consistent failure to comply

with court orders weighed in favor of dismissal); *Coleman*, 2011 WL 6182323, at *3 (lack of

compliance with discovery orders and lack of communication with court weighed in favor of

dismissal); *see also Lopez v. Catholic Charities of Archdiocese of New York*, No. 00 CIV. 1247,

2001 WL 50896, at *4 (S.D.N.Y. Jan. 22, 2001) ("There is no 'magic number' of months

required for dismissal under Rule 41(b)"); *Copeland v. Rosen*, 194 F.R.D. 127, 132 (S.D.N.Y.

2000).  However, as noted previously, no one factor is dispositive.  *Nolan*, 2008 WL 1758644, at

*3.

### ii.     Notice of Potential Dismissal

"Courts in this District have held that a motion pursuant to Rule 41(b) (as opposed to a

sua sponte dismissal by the court) provides the plaintiff with notice" of potential dismissal.

*McCorkle*, 2006 WL 2334041, at *2 (quoting *Lopez*, 2001 WL 50896, at *4); *see Brown*, 2015

WL 1535713, at *3 (recognizing that defendant's Rule 41(b) motion seeking dismissal provided

adequate notice to plaintiff as to possibility of dismissal).  Notwithstanding that a Rule 41(b)

motion itself provided Plaintiff with notice of possible dismissal, the fact remains that the Court

never formally warned Plaintiff of the prospect of dismissal in any prior Order.  In light of the

Second Circuit's caution that dismissal is a harsh remedy, the Court finds that this factor weighs

against dismissal of Plaintiff's action.  *See McCorkle*, 2006 WL 2334041, at *2 (acknowledging

that notice of Rule 41(b) motion constitutes sufficient notice but also noting  that the court

explicitly warned plaintiff that failure to respond to court's show cause order would result in

dismissal with prejudice); *Nolan*, 2008 WL 1758644, at *3 ("The Second Circuit has held that

where a court puts a plaintiff on notice that the court is considering dismissal, and a plaintiff fails

to file a document explaining the failures and outlining why the action should not be dismissed,

this element has been met.") (citing *Shannon*, 186 F.3d at 194-95); *see also Nita v. Conn. Dep't*

*of Envtl. Prot.*, 16 F.3d 482, 486 (2d Cir. 1994) (reversing dismissal where plaintiff received no

notice from the court that her case "was on the brink of dismissal if she failed to respond" to the

defendants' motions to dismiss).

### iii.      Prejudice to Defendants

The third factor under consideration requires the Court to evaluate the amount of

prejudice, if any, experienced by the Defendants as a result of Plaintiff's delays.  *See Paige*, 2014

WL 4804866, at *11.  Although "prejudice to defendants resulting from unreasonable delay may

be presumed," *Lewis*, 595 F. App'x at 38 (internal quotations and citation omitted), "in cases

where delay is more moderate or excusable, the need to show actual prejudice is proportionally

greater."  *Paige*, 2014 WL 4804866, at *11 (quoting *Lyell Theatre Corp.*, 682 F.2d at 43); *see*

*Nolan*, 2008 WL 1758644, at *3; *Jamison*, 2009 WL 1346832, at *2.

Defendants assert that Plaintiff has "delayed this matter over two years" and that as a

result, Defendants have been prejudiced since "witnesses with relevant information have

changed positions and left [Defendants'] employ."  Defs.' Mem. at 7.  Defendants make a

sweeping generalization as to the prejudice that they have experienced.  Unfortunately,

Defendants have not set forth any particularized instances which illustrate such prejudice.

Consequently, although the Court has acknowledged the delay in this litigation due to Plaintiff's

failure to comply with previous Court Orders, Defendants' strict reliance on this delay, without

more, is not sufficient to warrant a presumption of prejudice based upon these facts.  Indeed,

"there is no evidence in the record that [Plaintiff's] delay . . . caused any particular, or specially

burdensome, prejudice to the [D]efendants beyond the delay itself.  There are, for example, no indications that the delay increased the litigation costs the defendants had to bear or reduced (perhaps due to decaying evidence) their likelihood of success on the merits." *Lewis*, 595 F. App'x at 38.  As such, in evaluating the amount of prejudice experienced by the Defendants, the Court finds that this factor weighs against dismissal.

### iv.    Balancing of Court's and Plaintiff's Interests

In balancing the competing interests of Plaintiff's right to have her case tried on the merits against the Court's interest in mitigating judicial gridlock, the Second Circuit has instructed that "[t]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Lucas*, 84 F.3d at 535-36; *see Nolan*, 2008 WL 1758644, at *4; *Paige*, 2014 WL 4804866, at *11.  Thus, a "plaintiff's failure to prosecute must be 'vexatious and burdensome' on the Court's ability to manage its docket, as opposed to being merely 'silent and unobtrusive.'" *Nolan*, 2008 WL 1758644, at *4 (quoting *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 210 (2d Cir. 2001).

In the instant case, although Plaintiff failed to timely disclose her expert and has not diligently complied with previous Orders of the Court, neither has counsel "swamp[ed] the court with irrelevant or obstructionist filings." *LeSane*, 239 F.3d at 210.  Notwithstanding the limited judicial resources available and the fact that other litigants are awaiting the Court's attention, based upon the existing record, the Court will not subordinate Plaintiff's right to have her case tried on the merits simply to alleviate any potential minimal increase in calendar congestion which may have been caused by Plaintiff's lack of diligence.  *See Lucas*, 84 F.3d at 535-36 (recognizing that there must be an "extreme effect" on court congestion before a litigant's right to have her day in court is superseded by the convenience of the court).

### v.      Efficacy of Lesser Sanctions

In addressing the adequacy of lesser sanctions, "[i]t is clear that a district judge should employ the remedy of dismissal 'only when he is sure of the impotence of lesser sanctions.'" *Nolan*, 2008 WL 1758644, at *4 (quoting *Dodson v. Runyon*, 86 F.3d 37, 39 (2d Cir. 1996)). Further, "[i]n deciding on the suitability of lesser sanctions, and whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay. . . ." *Id.* at 40. "[T]he more the delay was occasioned by the lawyer's disregard of his obligation toward his client, the more this factor argues in favor of a less drastic sanction imposed directly on the lawyer." *Dodson*, 86 F.3d at 40.

In the instant case, Plaintiff's counsel was never ***explicitly*** warned by this Court in any of its prior Orders that any future failures to comply would result in a recommendation that the case be dismissed for failure to prosecute.  In addition, the record establishes that the lack of diligence in this case can be attributed primarily to Plaintiff's counsel.  Thus, while it is true that "a party who voluntarily chose [an] attorney as his representative in [an] action . . . cannot . . . avoid the consequences of the acts or omissions of this freely selected agent," *Hoodho v. Holder*, 558 F.3d 184, 192 (2d Cir. 2009), this fact nevertheless bears directly on the efficacy of lesser sanctions — especially, where, as here, less drastic sanctions have never been considered or imposed.  To leapfrog from no sanctions to the ultimate sanction of dismissal is neither proper nor warranted.

In light of the above discussion, the Court finds that dismissal is not appropriate. Recommending dismissal would be tantamount to having the punishment overreach the crime. However, in light of Plaintiff's track record in this case and counsel's "anemic abidance with Discovery/Scheduling Orders," *M.B. v. CSX Transp. Inc.*, 299 F.R.D. 341, 342 (N.D.N.Y. 2014),

18

some lesser sanction is warranted here.  The goal of a sanction is "1) to ensure that the offending party will not be able to profit from the failure to comply; 2) to provide a strong deterrence to the noncompliant party and to others in the public; and 3) to secure compliance with an order." *EverHome Mortg. Co. v. Charter Oak Fire Ins. Co.,* 2011 WL 4056043, at *2 (E.D.N.Y. Apr. 18, 2011) (quoting *Hudson v. IRS*, 2007 WL 2295048, at *7 (N.D.N.Y. Mar. 27, 2007)).

The imposition of sanctions "pursuant to Rule 37 'is within the discretion of the district court.'" *Duncan v. Donahue*, No. 12 CV 5139, 2014 WL 2941240, at *3 (E.D.N.Y.  June 30, 2014) (quoting *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp*., 694 F.3d 155, 159 (2d Cir. 2012)); *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 1994).  Under Fed. R. Civ. P. 37(b)(2)(A), the Court may levy an order for failure to obey a discovery order by "refusing to allow a party to support or oppose claims or defenses or prohibit the introduction of evidence with regard to those matters. . ." *M.B. v. CSX Transp. Inc.*, 299 F.R.D. at 345.  This Report and Recommendation has laid out the singularly unsatisfactory conduct and haphazard compliance by Plaintiff's counsel with discovery obligations over the course of the litigation to date.  No substantial justification for repeated noncompliance is found in the record here.  *See id*. at 347.

The parties' original agreed-upon discovery plan called for all discovery, including production of expert reports to be completed by September 6, 2013.  DE 15.  The Court notes that the Amended Complaint alleges the following:

> 72.     As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.
>
> 73.     As a result of the Defendants' discriminatory and intolerable treatment, Plaintiff suffered severe emotional distress.

The Court points out that Plaintiff produced no evidence of any emotional distress during the fact discovery period.  The record reflects that Defendants' counsel asked Plaintiff to produce all information and documents related to any medical or psychological treatment she received which she attributed to the events complained of in the Amended Complaint.  DE 19.  Plaintiff responded that she had no such documents.  That response was never supplemented prior to the close of fact discovery.   The conclusion to be drawn here is that (1) Plaintiff did not seek treatment from any physician, psychologist, therapist or mental health provider with regard to the incidents outlined in the Amended Complaint at the time those incidents occurred or at any time prior to bringing this lawsuit , or, (2) if she did, none of this information was provided to the Defendants during the fact discovery period.

At the August 29, 2013 Discovery Status Conference, Plaintiff's counsel announced that he intended to use an expert in the case and needed an extension of the September 6 deadline for exchange of expert reports.  DE 17.  The Court directed Plaintiff to disclose the identity of her expert witness by September 16, 2013.  DE 17.  A further extension was granted directing that expert reports had to be served no later than October 31, 2013.  *Id.*  Six weeks after the September 16, 2013 deadline to disclose the expert's identity had expired, Plaintiff's counsel moved for a further extension, stating that the Plaintiff had just secured and was identifying a Dr. Gerald Bryant as her expert.  DE 18.  During the December 23, 2013 oral argument on that motion, Plaintiff requested the extension of the discovery deadlines.  DE 22.  At the hearing, the Court learned that Plaintiff had not retained an expert until November 11, 2013 and would not be producing any treating mental health professional.  *Id.*   In addition to noting that Plaintiff had not demonstrated "good cause" for the delay, the Court pointed out that Plaintiff had had over a year since the Complaint was filed to identify an expert.  *Id*.  The Court reluctantly granted in

20

part and denied in part Plaintiff's motion to extend the discovery deadline at the conclusion of oral argument, notwithstanding the prejudice to the Defendants. *Id.* Simultaneously, the Court gave Plaintiff specific directives regarding the expert report, including striking any new factual assertions in the report which were not disclosed during discovery. *Id.* The ensuing debacle is set forth *supra* at pages 5 - 7 of this Report and Recommendation.

The record is clear that Plaintiff retained her proposed expert specifically for this litigation. The proffered expert did not treat the Plaintiff in relation to the claims she has asserted in conjunction with the underlying litigation. Moreover, Plaintiff did not provide any responsive information concerning emotional distress damages during the discovery period. Based on all of the circumstances described here relating to discovery and Plaintiff's failure to abide by the discovery deadlines as well as the Orders of this Court, the Court respectfully recommends to Judge Seybert that the appropriate sanction here should be the preclusion of Plaintiff's proffered expert and expert report. *See Paulus v. Holimont, Inc.*, 315 F.R.D. 13, 17 (W.D.N.Y. 2016) (late disclosure of expert witness was due to plaintiff's lack of diligence, was not substantially justified or harmless so that plaintiff's expert would be precluded as discovery sanction); *Lujan v. Cabana Management, Inc.*, 284 F.R.D. 50,70 (E.D.N.Y. 2012) (granting motion to strike/preclude exhibits where explanation for failure to timely disclose information was "wholly inadequate" and weighed heavily in favor of preclusion as sanction); *Richmond v. Gen. Nutrition Ctrs., Inc.*, No. 08 Civ. 3577, 2012 WL 762307, at *5 (S.D.N.Y. Mar. 9, 2012) (court precluding at trial any damages-related computations and supporting documents not produced by plaintiffs during discovery as non-production was neither substantially justified nor harmless). Plaintiff is still free to testify to her own emotional distress at the time of trial.

**IV.**    <u>CONCLUSION</u>

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that (1) Defendants' motion to dismiss Plaintiff's Amended Complaint be DENIED and (2) that the Court impose a sanction on Plaintiff in the form of a preclusion order as to Plaintiff's expert report.

**V.**    <u>OBJECTIONS</u>

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **<u>A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections</u>**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

<strong>SO ORDERED</strong>.

Dated: Central Islip, New York
      August 5, 2016

/s/ A. Kathleen Tomlinson<br>A. KATHLEEN TOMLINSON<br>U.S. Magistrate Judge