**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
CHRISTINA KIZER,

                         Plaintiff,

                                                        **REPORT &**
                                                **RECOMMENDATION**

              -against -

                                           CV 12-5387 (JS) (AKT)


ABERCROMBIE & FITCH CO.,
ABERCROMBIE & FITCH STORES, INC., and
ABERCROMBIE & FITCH TRADING CO.,
doing business as Abercrombie and Fitch
doing business as Hollister and Ruehl,

                             Defendants.
-------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I.     PRELIMINARY STATEMENT

       Christina Kizer ("Plaintiff") brings this employment discrimination and wage and hour

action against her former employer Abercrombie & Fitch Co., Abercrombie & Fitch Stores, Inc.,

and Abercrombie & Fitch Trading Co. (collectively, the "Defendants"), pursuant to 42 U.S.C.

§ 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human

Rights Law, the New York City Human Rights Law, the Fair Labor Standards Act, and the New

York Labor Law.  *See generally* Am. Compl. [DE 7].  Plaintiff alleges that Defendants

discriminated against her in the terms and conditions of her employment and subjected her to a

hostile work environment on the basis of her race.  Based on those allegations, Plaintiff contends

that she (1) was unlawfully retaliated against by the Defendants for opposing discrimination, and

(2) was constructively discharged.  In addition, Plaintiff maintains that Defendants misclassified

her as an exempt employee under the federal and state wage and hour laws, thereby depriving

her of lawfully earned overtime compensation.  Plaintiff further seeks to recover damages for the emotional and mental distress she alleges she sustained as a result of Defendants' actions.

Presently before the Court is Defendants' motion for attorney's fees and costs [DE 47]. On April 12, 2017, Judge Seybert referred Defendants' motion to this Court for a Report and Recommendation as to whether the motion should be granted and, if so, to determine the appropriate amount of fees and costs to be awarded.  *See* DE 50.  For the reasons that follow, the Court recommends to Judge Seybert that Defendants' motion be GRANTED, in part, and DENIED, in part.

## II.    Relevant Procedural History

On December 2, 2015, Defendants filed a motion to dismiss the Amended Complaint based upon Plaintiff's purported failure to timely prosecute her claims and comply with this Court's Orders.  *See* DE 33.  On December 11, 2015, Judge Seybert referred Defendants' motion to dismiss to this Court for a Report and Recommendation as to whether the motion should be granted.  DE 36.[1]  Thereafter, on August 5, 2016, this Court issued its Report and Recommendations regarding Defendants' motion.  DE 40.  Specifically, this Court recommended to Judge Seybert that "(1) Defendants' motion to dismiss Plaintiff's Amended Complaint be DENIED and (2) that the Court impose a sanction on Plaintiff in the form of a preclusion order as to Plaintiff's expert report."  *Id*. at 22 (emphasis in original).  Although Defendants did not object to either of the recommendations, they requested that "Plaintiff's Counsel should be ordered to pay the reasonable expenses and attorney's fees [ ] incurred [by Defendants] as a result of Plaintiff's Counsel's repeated failures to comply with the Court's orders. . . ," pursuant

---

[1]    For the sake of completeness, the Court points out that on April 12, 2016, the docket reflects that Judge Seybert again referred Defendants' motion to dismiss to this Court for a Report and Recommendation.  *See* DE 39.

to Rule 37(b)(2)(C).  DE 43 at 1-2.  Plaintiff's counsel did not file any objections to the Report and Recommendation.

On September 23, 2016, Judge Seybert adopted the Report and Recommendation in its entirety.  DE 46 at 7.  In addition, pursuant to Rule 37(b)(2)(C), Judge Seybert permitted Defendants to "submit a properly supported fee application . . . [which] must include an attorney declaration attaching contemporaneous time records, as well as legal support for the fees sought."  *Id*. at 6.  Defendants filed the instant motion seeking fees and costs on October 12, 2016.  DE 47.  Thereafter, Plaintiff filed her opposition on October 14, 2016 and Defendants' filed their reply on October 19, 2016.  DE 48, 49.  Judge Seybert referred the instant motion to this Court for a Report and Recommendation as to whether the motion should be granted and, if so, to determine the appropriate amount of fees and costs to be awarded.  *See* DE 50.  The Court now turns to the instant motion.

## III.   DEFENDANTS' MOTION FOR ATTORNEY'S FEES & COSTS

### A.  Applicable Law

#### 1.  *Attorney's Fees*

In adjudicating a motion for attorney's fees, both the Second Circuit and the Supreme Court have held that "the lodestar method — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2007)). The Court should determine the "presumptively reasonable fee" by looking to "what a reasonable paying client would be willing to pay."  *Arbor Hill*, 522 F.3d at 183-84.

"[W]hether the calculation is referred to as the lodestar or the presumptively reasonable fee, courts will take into account case-specific factors to help determine the reasonableness of the hourly rates and the number of hours expended." *Pinzon v. Paul Lent Mechanical Sys.*, No. 11 Civ. 3384, 2012 WL 4174725, at *5 (Aug. 21, 2012), *adopted by* 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012). These factors include:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184. "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." *Finkel v. Omega Comm'n Svcs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

To determine reasonable hourly rates, the Court considers this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits. *See Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 175-76 (2d. Cir. 2009); *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983); *see also Joseph v. HDMJ Restaurant, Inc.*, No. 09 Civ. 240, 2013 WL 4811225, at *19 (E.D.N.Y. Sept. 9, 2013) (internal citations omitted); *Pinzon*, 2012 WL 4174725, at *5. Prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour. *See Am. Fire & Cas. Co. v. Scott Elec. Servs., LLC*, No. CV153111, 2017 WL 395207, at *2

(E.D.N.Y. Jan. 9, 2017), *report and recommendation adopted*, 2017 WL 374728 (E.D.N.Y. Jan. 25, 2017); *Incredible Foods Grp., LLC v. Unifoods, S.A. De C.V.*, No. 14-CV-5207, 2016 WL 4179943, at *3 (E.D.N.Y. Aug. 5, 2016); *Valdez v. H & S Rest. Operations, Inc.*, No. 14 CV 4701, 2016 WL 3079028, at *8 (E.D.N.Y. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016); *OneWest Bank, N.A. v. Denham* No. CV 14-5529, 2015 WL 5562980, at *12 (E.D.N.Y. Aug. 31, 2015), *adopted by* 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015); *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation Pension & Welfare Funds v. L&P Interiors, Inc.*, No. CV 14-3316, 2015 WL 5562316, at *13 (E.D.N.Y. Aug. 14, 2015) *adopted by* 2015 WL 5562340 (E.D.N.Y. Sept. 18, 2015); *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09 Civ. 5251, 2014 WL 1514235, at *14 (E.D.N.Y. Apr. 16, 2014) (collecting cases).

Some "[c]ourts have recognized slightly higher ranges in this district of $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." *Small v. New York City Transit Auth.*, No. 09 Civ. 2139, 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014) (internal quotations omitted); *see Feltzin v. Ciampa Whitepoint LLC*, No. 15-CV-2279, 2017 WL 570761, at *2 (E.D.N.Y. Feb. 13, 2017); *Volpe v. Nassau Cty.*, No. 12 CV 2416, 2016 WL 6238525, at *6 (E.D.N.Y. Oct. 24, 2016); *Nicaisse v. Stephens & Michaels Associates, Inc.*, No. CV 14-1570, 2016 WL 4367222, at *4 (E.D.N.Y. June 9, 2016), *report and recommendation adopted*, No. 14-CV-1570, 2016 WL 4275687 (E.D.N.Y. Aug. 12, 2016); *Brinkmeier v. Round Two Recovery, LLC*, No. CV 153693, 2016 WL 4384330, at *9 (E.D.N.Y. July 25, 2016), *report and recommendation adopted*, No. 15-CV-3693, 2016 WL 4384723 (E.D.N.Y. Aug. 16, 2016).

The Second Circuit has not recently revisited the issue of what constitutes a reasonable fee within this district since its discussion in *Konits v. Karahalis*, 409 F. App'x 418, 422–23 (2d Cir. 2011) (summary order).  In *Konits*, the Court of Appeals affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour.  A number of district courts within this district continue to rely, in part, on *Konits* in determining the appropriate range of fees.  *See Morales v. B&M Gen. Renovation Inc.*, No. 14 CV 7290M, 2016 WL 1266624, at *11 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016) (relying, in part, on *Konits* and finding that "the prevailing hourly rate for partners in this district is between $300 and $400); *Incredible Foods Grp., LLC*, 2016 WL 4179943, at *3 (same); *Valdez*, 2016 WL 3079028, at *8 (same); *Litkofsky v. P & L Acquisitions, LLC*, No. CV 15 5429, 2016 WL 7167955, at *9 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted sub nom. Ira Litkofsky v. P & L Acquisitions LLS*, No. CV 15-5429, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) (same); *Gesualdi v. Paladin Constr. Corp.*, No. CV 14-7291, 2016 WL 943589, at *11 (E.D.N.Y. Feb. 18, 2016), *report and recommendation adopted*, 2016 WL 953261 (E.D.N.Y. Mar. 11, 2016) (same); *Brinkmeier v. Round Two Recovery, LLC*, No. CV15 3693, 2016 WL 4384330, at *9 (E.D.N.Y. July 25, 2016), *report and recommendation adopted*, 2016 WL 4384723 (E.D.N.Y. Aug. 16, 2016); *Chauca v. Park Mgmt. Sys., LLC*, No. 10CV05304, 2016 WL 8117953, at *2 (E.D.N.Y. July 18, 2016) (relying, in part, on *Konits* and finding that hourly rate ranging from $250-$325 for attorney with approximately 11 years of experience in the area of employment discrimination, although "fall[ing] towards the higher end of the EDNY scale" was reasonable).

As to paralegals, courts in the Eastern District of New York have held that a range of $70 to $100 per hour is a reasonable fee in matters such as this. *See Sciascia*, 2014 WL 940721, at *10 (finding $100 hourly rate for paralegals to be reasonable); *Ferrara v. Prof'l Pavers Corp.*, No. 11 Civ. 1433, 2013 WL 1212816, at *5 (E.D.N.Y. Mar. 23, 2013) ("Recently, reasonable hourly rates in this district have ranged from . . . $70 to $100 for paralegals.") (internal citations omitted); *Valdez*, 2016 WL 3079028, at *8.

To determine whether the number of hours spent by Defendants' counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. 03 Civ. 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).  A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation . . . ." *Cho v. Koam Medical Servs. P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)); *Barbu v. Life Ins. Co. of N. Am.*, No. 12-CV-1629, 2015 WL 778325, at *4 (E.D.N.Y. Feb. 24, 2015).  Likewise, where counsel relies on vague / excessive entries or block billing practices which make it difficult for a court to assess reasonableness, an across-the-board fee reduction is warranted.  *Anderson v. Cty. of Suffolk*, No. CV 09-1913, 2016 WL 1444594, at *6 (E.D.N.Y. Apr. 11, 2016) (recognizing that where "counsel relies on vague entries and block billing, courts are unable to review hours for reasonableness" and noting that "[c]ourts have imposed reductions as high as 40% based solely on vague billing entries"); *see Barbu*, 2015 WL 778325, at *5 (imposing a 33% reduction in total hours based upon vague entries and block billing); *Caban v. Employee Sec. Fund of the Elec. Products Indus. Pension Plan*, No. 10–CV–389, 2015 WL 7454601, at *8 (E.D.N.Y. Nov. 23, 2015) (33% reduction in overall hours spent

7

due to block billing, vague entries, and excessive time spent on certain routine tasks);

*Gagasoules v. MBF Leasing LLC*, 296 F.R.D. 107, 112 (E.D.N.Y. 2013) (40% reduction due to

vague and unrelated entries); *see also Ritchie v. Gano*, 756 F. Supp. 2d 581, 583 (S.D.N.Y.

2010) (reducing attorneys' fee award by forty percent and holding that "[i]n the instance where a

court has directed parties to parse out records to clearly state how much time the attorneys spent

on each claim, and the parties have done so insufficiently and have referred to an unrealistic

volume of hours as 'inextricably intertwined' with many claims, the court may also decrease the

requested award amount"); *DeVito v. Hempstead China Shop, Inc.*, 831 F. Supp. 1037, 1045

(E.D.N.Y. 1993) (reducing attorneys' fee request by 40% due to duplication of work, vague

descriptions of some of the work performed and the necessity of the work).

Further, where counsel seeks compensation for time spent completing administrative

tasks or work that should have been accomplished by a less-skilled practitioner, "[u]niform

percentage cutbacks are warranted." *De La Paz v. Rubin & Rothman,* LLC, No. 11 Civ. 9625,

2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013); *see Chavez*, 2016 WL 1171586, at *5

(reducing total hours by 30 percent since "much of the work in this case could have been

conducted by a less experienced associate billing at a significantly lower rate" and because

"some of the work appears to be duplicative of work conducted in other similar FDCPA cases

handled by the same counsel"); *Barshay*, 2016 WL 3578993, at *4 (reducing total hours claimed

in FDCPA action by 20 percent in light of the duplicative nature of the work, the fact that many

of the tasks could have been accomplished by "a less experienced associate" and based upon the

overall lack of care taken in preparation of materials submitted to the court).  The party seeking

an award of attorneys' fees bears the burden to document "the hours reasonably spent by

counsel, and thus must support its request by providing contemporaneous time records reflecting,

for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Cho*, 524 F. Supp. 2d at 209 (internal citations, quotations, and alteration omitted).

### 2. *Costs*

Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *Sheet Metal Workers Nat'l Pension Fund v. Evans*, No. 12 Civ. 3049, 2014 WL 2600095, at *11 (E.D.N.Y. Jun. 11, 2014). However, it is incumbent upon the party seeking reimbursement of its costs to provide the court adequate substantiation in the form of receipts and other documents not only showing such costs were incurred, but that they were paid. *See Lee v. Santiago*, No. 12 CIV. 2558, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("[I]t is [ ] the requesting party's burden to support its application, and this means that the requested costs must be substantiated . . . A mere assertion that a certain cost was incurred, though, is insufficient, where such an assertion is made in a conclusory fashion in a brief or bill of costs, without a supporting affidavit, declaration, or documentation."); *Volpe v. Nassau Cty.*, No. 12 CV 2416, 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016) ("The fee applicant bears the burden of adequately documenting and itemizing the costs requested.") (internal quotation omitted). In addition, Local Civil Rule 54.1 states that "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,' " and "[b]ills for the costs claimed must be attached as exhibits." *Id.* (quoting *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458, 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012), *report & recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012)).

Generally, the only exception to this rule is where reimbursement is sought for a filing fee. In such cases, a court may take judicial notice of the fact that the fee was paid by virtue of

entries in the docket.  *See Douyon v. NY Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 352

(E.D.N.Y. 2014), *judgment entered sub nom. Douyon v. N.Y. Med. Health Care, P.C.*, No. CV

10-3983, 2015 WL 5821499 (E.D.N.Y. Sept. 30, 2015) ("The Court takes judicial notice of the

$350 filing fee reflected on the docket."); *Lee v. Santiago*, No. 12 CIV. 2558, 2013 WL

4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("Court fees that are reflected on the Court's docket

are sufficiently substantiated").

### B.  Application to the Facts

#### 1.  *Defendants' Entitlement to Attorney's Fees & Costs*

Rule 37(a)(1) of the Federal Rules of Civil Procedure allows an affected party to "move

for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  In addition, where a

party fails to otherwise comply with a discovery order, "the court where the action is pending

may issue further just orders" which includes

> **(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> **(iii)** striking pleadings in whole or in part;
>
> **(iv)** staying further proceedings until the order is obeyed;
>
> **(v)** dismissing the action or proceeding in whole or in part;
>
> **(vi)** rendering a default judgment against the disobedient party; or
>
> **(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).  Likewise, Rule 37(b)(2)(C) provides that

> [i]nstead of or in addition to the orders above, the court **must** order
> the disobedient party, the attorney advising that party, or both to pay
> the reasonable expenses, including attorney's fees, caused by the
> failure, unless the failure was substantially justified or other
> circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C) (emphasis added); *see Davis v. Hunt Leibert Jacobson P.C.*, No. 3:12

CV 1102, 2016 WL 3276948, at *5 (D. Conn. June 10, 2016) (applying Rule 37(b)(2)(C) and

directing that "Plaintiff's counsel [ ] pay reasonable attorneys' fees and costs expended in

litigating the motion to compel and those portions of the motion for sanctions on which

Defendant prevailed. . . ."); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570, 2015

WL 6666703, at *2 n. 1 (S.D.N.Y. Oct. 28, 2015), *report and recommendation adopted sub nom.*

*In re: Terrorist Attacks*, 2015 WL 9255560 (S.D.N.Y. Dec. 18, 2015) ("When the motion is

occasioned by a party's failure to comply with a discovery order, Rule 37(b)(2)(C) requires that

the disobedient party or its counsel ordinarily pay the reasonable expenses, including attorney's

fees, *caused by the failure.*") (emphasis in original) (internal citation omitted).

In the instant case, Plaintiff failed to comply with discovery orders issued by this Court,

as set forth in the August 5, 2016 Report and Recommendation.  *See* DE 40.  On that basis, this

Court recommended to Judge Seybert that "the Court impose a sanction on Plaintiff in the form

of a preclusion order as to Plaintiff's expert report."  DE 40 at 22.  In her September 23, 2016,

Memorandum and Order, Judge Seybert adopted this Court's Report and Recommendation in its

entirety and specifically directed that Plaintiff be "precluded from offering her expert report in

support of her claims."  DE 46 at 7.  In addition, although not addressed by this Court in the

August 5, 2016 Report and Recommendation, Judge Seybert pointed out the applicability of Rule

37(b)(2)(C) and, in accordance with that Rule, permitted Defendants to "submit a properly

supported fee application. . . ."  *Id*. at 6.

In light of the fact that Plaintiff failed to comply with several discovery orders of this Court, Rule 37(b)(2)(C) requires that "instead of or in addition to" other sanctions imposed, the disobedient party or his designated counsel "must" pay "reasonable expenses" to include attorney's fees caused by the failure.  Fed. R. Civ. P. 37(b)(2)(C); *see Davis*, 2016 WL 3276948, at *5; *Morin v. Tormey*, No. 5:07-CV-517, 2010 WL 2771826, at *3 (N.D.N.Y. Apr. 29, 2010), *modified on reconsideration*, 2010 WL 2775870 (N.D.N.Y. July 13, 2010); *Kandey Co. v. Barbera*, No. 11 CV 478A, 2012 WL 3838179, at *2 (W.D.N.Y. Sept. 4, 2012) (recognizing that the monetary sanction set forth in Rule 37(b)(2)(C) "is mandatory regardless of whatever other sanctions are imposed").  As such, in light of the present posture of this case, and in accordance with Rule 37(b)(2)(C), Defendants are entitled to recover their "reasonable expenses, including attorney's fees, caused by [Plaintiff's] failure[.]"  Fed. R. Civ. P. 37(b)(2)(C).

### 2.   *Reasonableness of Attorney's Fees Award*

Having determined that Defendants are entitled to seek reasonable attorney's fees and costs in accordance with Rule 37(b)(2)(C), the Court turns its attention to the presumptively reasonable fee based upon Defendants' submissions.  *See Laboy v. Office Equip. & Supply Corp.*, No. 15 CIV 3321, 2016 WL 5462976, at *16 (S.D.N.Y. Sept. 29, 2016), *report and recommendation adopted*, 2016 WL 6534250 (S.D.N.Y. Nov. 2, 2016) ("As the fee applicant, plaintiff 'bears the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed.'") (quoting *General Elec. Co. v. Compagnie Euralair*, S.A., 96 Civ. 0884, 1997 WL 397627, at *4 (S.D.N.Y. July 3, 1997)).  The Court will apply the legal principles set forth in Section III.A.1, *supra*.

Vorys, Sater, Seymour and Pease LLP ("Vorys"), Defendants' counsel of record in the instant case, seeks fees in conjunction with work performed by attorneys Thomas N. McCormick

("McCormick") and Tyler B. Pensyl ("Pensyl") necessitated by the sanctionable conduct engaged in by Plaintiff's counsel. *See* October 12, 2016 Declaration of Thomas N. McCormick ("McCormick Decl.") ¶ 4. Specifically, counsel seeks $17,666.50 in fees for 49.7 overall hours worked on these particular matters. *Id*. ¶¶ 9, 12; *see* McCormick Decl., Exhibit ("Ex.") C (contemporaneous time records). As such, the Court must determine the overall reasonableness of the: (1) hourly rates requested for each attorney who worked on the case; and (2) overall number of hours claimed.

### i. Reasonable Hourly Rate

Vorys requests that each attorney who worked on this matter be compensated at hourly rates ranging from $285 per hour to $400 per hour. *See* McCormick Decl. ¶ 10, Ex. C (contemporaneous billing records), Ex. D (summary of attorney's fees). Specifically, the hourly rates sought are as follows: (1) $375-400 per hour for Thomas N. McCormick (Partner); and (2) $285-350 per hour for Tyler B. Pensyl (Partner). *See id*.

In support of these requested hourly rates, Vorys has included biographical summaries for both Attorney McCormick and Attorney Pensyl. *Id*., Ex. A (biographical summary of Attorney McCormick), Ex. B (biographical summary of Attorney Pensyl); *see Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 305 (E.D.N.Y. 2015) ("biographical information concerning the attorneys for whom charges were submitted [ ] is required to evaluate experience levels"); *see also LV v. N.Y. City Dep't of Educ.*, 700 F. Supp. 2d 510, 521 (S.D.N.Y. 2010) (recognizing that it is Plaintiff's burden, as the party seeking fees, to "offer evidence to the Court in addition to the attorney's own affidavits why its requested fee is appropriate").

Attorney McCormick is a partner in the Columbus, Ohio office of Vorys.  McCormick

Decl. Ex. A.  He graduated from the University of Wisconsin Law School, with honors, in 2002.

*Id*.  Although he has "been practicing [law] for 14 years," *id*. ¶ 2, Attorney McCormick's

biography does not include a full chronological account of his employment history from 2002

through to the present.  For example, although Attorney McCormick graduated from law school

in 2002 and presumably became a member of the Ohio bar shortly thereafter, there is no

indication in the record whether Attorney McCormick immediately began practicing law after

graduating from law school.  Specifically, there is a three-year gap between Attorney

McCormick's graduation in 2002 and his clerkship with the Honorable James L. Graham in

2005.  The Court cannot determine what, if any, legal experience he accumulated in the interim.

Likewise, it is unclear when Attorney McCormick joined Vorys, although the record does

indicate that he became a partner in January 2011.  *See* Plaintiff's Memorandum of Law in

Opposition to Defendants' Motion for Attorneys' Fees and Costs ("Pl.'s Opp'n") [DE 48], Ex. A

(January 3, 2011 Vorys press release announcing that Thomas N. McCormick was named a

partner).  In any event, according to Attorney McCormick, his practice is presently focused on

employment and litigation with a "specific focus on employment disputes and class action

litigation."  McCormick Decl. Ex. A.  He has also "litigated numerous class actions involving

wage and hour and consumer sales practices act claims" and has "appeared in state and federal

courts throughout the country and before a national and international arbitration panel."  *Id*.

Attorney McCormick is a member of the Federal Bar Association and the Columbus Bar

Association.  *Id*.

Attorney Pensyl is also a partner in the Columbus, Ohio office of Vorys.  McCormick

Decl. Ex. B.  The record indicates that he was named a partner on January 2, 2015.  Pl.'s Opp'n,

Ex. A (January 2, 2015 Vorys press release announcing that Tyler B. Pensyl was named a partner).  Attorney Pensyl graduated from the University of Toledo College of Law, *summa cum laude*, in 2006.  McCormick Decl. Ex. B.  In addition, while in law school, Attorney Pensyl served as an associate member and technical editor of the *University of Toledo Law Review*.  *Id*.  Attorney Pensyl's biography similarly fails to include a full chronological employment history from 2006 to the present.  In addition, it is unclear from the record when Attorney Pensyl joined Vorys as an associate.  According to his biography, Attorney Pensyl "litigates many different types of business and commercial cases, but much of his practice is focused on employment litigation and intellectual property and trade secret litigation."  *Id*.  He also "devotes a portion of his practice to toxic tort litigation."  *Id*.

Plaintiff opposes the rates sought by Attorneys McCormick and Pensyl on the grounds that they "are excessive when compared to similarly situated attorneys in the Eastern District of New York."  Pl.'s Opp'n at 2.  Specifically, with regard to Attorney McCormick, Plaintiff asserts that since he "was only a partner for a few years in 2013 and 2014 . . . his hourly rate should be reduced . . . to the lower end of the scale for partners - $300 per hour."  *Id*. at 3.  Likewise, as to Attorney Pensyl, Plaintiff asserts that "only 1 of the 21 time entries for Mr. Pensyl occurred when he was a partner . . . [and] [a]s such, he should be compensated at the appropriate hourly rate."  *Id*. at 4.  Plaintiff thus urges the Court to "reduce Mr. Pensyl's hourly rate . . . to $200 per hour."  *Id*.

In their reply, Defendants assert that "several of the cases [relied upon by Plaintiff] are dated" and that, in any event, "none of the cases cited by Plaintiff actually hold that the standard rates of Messrs. McCormick's [*sic*] and Pensyl's [*sic*] are unreasonable.  Instead, those cases simply approve slightly lower hourly rates as reasonable, without reference to or any opinion on

a higher hourly rate also being reasonable."  Reply in Support of Defendants' Motion for Attorneys' Fees and Costs ("Defs.' Reply") [DE 49] at 1-3.  In addition, Defendants state that the rates sought for both Attorneys McCormick and Pensyl are fair and reasonable given their 14 and 10 years of respective experience practicing law and that the rates requested "are in line with what courts in the Eastern District of New York have already deemed reasonable" for senior associates and partners.  *Id*. at 3-4.

It is Defendants' burden, as the party seeking fees, to "offer evidence to the Court in addition to the attorney's own affidavits why its requested fee is appropriate."  *LV*, 700 F. Supp. 2d at 521; *Laboy*, 2016 WL 5462976, at *16; *Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC.*, 553 F. Supp. 2d 201, 208 (E.D.N.Y. 2008).  In the instant case, although Defendants have submitted biographical summaries for each attorney, these summaries — which are essentially attorney profiles found on the law firm's website — appear to be geared towards providing prospective clients and the public with a "snapshot" of the attorney's background and experience.  Here, however the Court is tasked with determining whether the hourly rates charged are reasonable.  This requires a more thorough inquiry into each attorney's educational background and employment experience from the time of bar passage to the present.  In this regard, the biographical summaries are lacking inasmuch as they fail to contain a detailed employment chronology for each attorney.  Further, although both summaries include a section entitled "notable experience" — and Attorney Pensyl's biography includes a section entitled "career highlights," — the generalized descriptions contained in these sections provide the Court with little insight to help determine the reasonableness of the hourly rates requested.  A curriculum vitae or resume could have provided the Court with the necessary detail to properly

address whether the hourly rates sought are, in fact, reasonable.  As it stands, the lack of detail does not assist in justifying the reasonableness of the hourly rates sought for each practitioner.

As such, although the Court will take into account the information contained in the biographical summaries in ascertaining the appropriate hourly rate, "[t]he Court . . . will [primarily] rely on the decisional law and its own experience in assessing the reasonableness of [Vorys'] requested rates." *LV*, 700 F. Supp. 2d at 521 (citing *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005) (courts may take "judicial notice of the rates awarded in prior cases and [rely on their] own familiarity with the rates prevailing in the district") (alteration in original)); *see also Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct Data Verlag Ag*, No. 04 Civ. 2983, 2006 WL 4049155, at *17–18 (S.D.N.Y. Dec. 11, 2006) (declining to award fees at the requested rate and instead awarding at a lower rate for paralegals and law clerks because the court could not judge the reasonableness of the request where the moving party did not provide background and experience information); *see also Prot. One Alarm Monitoring, Inc.*, 553 F. Supp. 2d at 209 (reducing requested hourly rates "because counsel has failed to provide information regarding the experience levels of the attorneys who worked on the case"); *Pilitz v. Inc. Vill. of Freeport*, No. CV 07-4078, 2011 WL 5825138, at *5 (E.D.N.Y. Nov. 17, 2011) ("Where, as here, the moving party fails to provide any biographical information to support the reasonableness of the rates, the court may use its discretion to award fees at a lower rate than requested.") (quoting *Artemide Inc. v. Spero Elec. Corp.*, No. CV 09–1110, 2010 WL 5452075, at *4 (E.D.N.Y. Nov. 23, 2010)).

Having considered (1) the parties' respective arguments, (2) Defendants' submissions in support of the hourly rates requested by counsel, (3) the overall complexity of the matters at issue in this fee application and (4) this Circuit's adherence to the forum rule, the Court finds that

a presumptively reasonable fee for Attorney McCormick is $350.00 per hour while a presumptively reasonable fee for Attorney Pensyl is $300.00 per hour.  While these rates are lower than those requested by counsel, the Court does not find that awarding hourly rates at the upper end of the spectrum is warranted here.  As noted previously, prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour.  *See Am. Fire & Cas. Co*, 2017 WL 395207, at *2; *Incredible Foods Grp., LLC*, 2016 WL 4179943, at *3; *Valdez*, 2016 WL 3079028, at *8; *see also Barbu v. Life Ins. Co. of North America, DBA Cigna*, No. 121-CV-1629, 2015 WL 778325, at *3 (E.D.N.Y. Feb. 24, 2015) ("Courts have awarded rates of $200 to $400 per hour for partners in this district."). Moreover, during the majority of time Attorney Pensyl spent on this case, he was an associate, and thus the recommended hourly rate of $300.00 is actually within the upper range of the rate scale for associates working within this district.  *See Small v. New York City Transit Auth.*, No. 09 Civ. 2139, 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014); *Nicaisse*, 2016 WL 4367222, at *4; *Brinkmeier*, 2016 WL 4384330, at *9; *see also In re Certain–Default–Motions Brought o/b/o Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor–Mgmt. Coop., Pension & Welfare Funds*, Nos. 13-6364, 14-325, 14-2893, 2015 WL 968125, at *10 (E.D.N.Y. Feb. 27, 2015) *report and recommendation adopted*, 2015 WL 1247085 (E.D.N.Y. Mar.18, 2015) and 2015 WL 1396475 (E.D.N.Y. Mar. 25, 2015) ("[R]easonable fees in this district vary from $100 to $295 per hour for associates[.]") (citation omitted) (internal quotations omitted); *Flores*, 104 F. Supp. 3d at 313 (same); *see also Chopen v. Olive Vine, Inc.*, No. CV 2012-2269, 2015 WL 1514390, at *15 (E.D.N.Y. Mar. 13, 2015), *report and recommendation adopted as modified*, 2015 WL 1542082 (E.D.N.Y. Mar. 31, 2015) (recognizing that "the nature of

representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate") (internal citation omitted).

Based upon the foregoing analysis, the Court respectfully recommends to Judge Seybert that Attorney McCormick be compensated at an hourly rate of $350.00 and that Attorney Pensyl be compensated at an hourly rate of $300.00.

### ii.  Number of Hours Expended

Having determined the presumptively reasonable hourly rate for each attorney who has worked on this matter, the Court turns its attention to whether the overall number of hours being claimed is reasonable by applying the legal principles set forth in Section III.A.1 of this Report and Recommendation.  *See* Section III.A.1 *supra* (setting forth the applicable law when analyzing the reasonableness of an application for attorney's fees).

Defendants seek compensation for "a total of 49.7 hours litigating matters solely attributable to Plaintiff's conduct that was deemed sanctionable by this Court."  McCormick Decl. ¶ 9.  Specifically, according to Defendants, "[t]his work was necessitated by Plaintiff's counsel's repeated failures to comply with the Court's orders, was necessary for competent preparation and presentation of the issues to the Court, and was performed in the most efficient manner possible under the circumstances."  *Id*. ¶ 11; Defs.' Mem. at 3-4 (setting forth seven separate actions taken by Defendants' counsel resulting from Plaintiff's sanctionable conduct, including drafting motions and making court appearances).  As such, Defendants request that "the Court [ ] find that the number of hours [Defendants'] attorneys expended litigating the issues arising out of Plaintiff's sanctionable conduct is reasonable."  Defs.' Mem. at 9.

In opposition, Plaintiff claims that "most of the hours that Defendants claim are either outside the scope of the Court's ruling, excessive, duplicative, or could have been handled by

local New York counsel." Pl.'s Opp'n at 4. Specifically Plaintiff argues that: (1) although Defendants seek recovery of fees for reviewing and drafting a response to Plaintiff's untimely motion for extension of time, the Court "granted Plaintiff's request" and therefore "Plaintiff should not be penalized for her litigation success; (2) Defendants should not be able to recover for "their preparation and attendance at the December 23, 2013 court hearing" since "Defendants' retained local New York counsel and therefore did not have to prepare for and attend the December 23, 2013 hearing. . . ;" (3) Defendants should not be able to recover the 14.1 hours spent preparing for the December 23, 2013 conference, since given that it was a "simple discovery conference" the total time expended was "unnecessary" and "excessive;" (4) "Plaintiff's actions did not require Defendants to prepare a motion to stay case deadlines while their application to strike was pending." Pl.'s Opp'n at 4-5.

In reply, Defendants state that: (1) the time spent reviewing and preparing a response to "Plaintiff's untimely motion for extension of time" is compensable since "Plaintiff's request was granted only in part . . . and only because [the Court] did not want to prejudice Plaintiff as a result of Plaintiff's counsel's 'incompetence.'" In addition "Plaintiff's counsel failed to comply with the Court's Order" and therefore, according to Defendants, "Plaintiff's counsel's request for an extension of time was not only improper, but a complete waste of Abercrombie's time;" (2) the 14.1 hours and resulting fees charge for "preparing for and attending the December [2]3, 2013 hearing" are reasonable since counsel had to "review numerous pleadings, transcripts, and other documents so that they would be prepared to address the numerous issues they anticipated the Court would raise during the hearing;" (3) "Plaintiff's counsel's contention that the hearing was merely a 'simple discovery conference' is also incorrect. The purpose of the hearing was to address whether Plaintiff would be granted an extension to disclose an expert witness to opine on

20

Plaintiff's claimed emotional distress damages.  This important hearing had a direct impact on the amount of damages Plaintiff could claim at trial and the amount of and type of evidence she would be able to present in support of that claim;" (4) although local counsel was retained, "Abercrombie's Ohio attorneys have handled this case from the outset and handled all of the events that led up to the December 23, 2013 hearing, including all depositions, conferences with the Court, and briefing on Plaintiff's motion for extension of time.  If Abercrombie's local counsel would have attended the hearing, they would have had to expend a far greater amount of time preparing for the hearing, and, as a result, the attorneys' fees Abercrombie would have incurred would have been much higher;" and (5) the motion to stay case deadlines is compensable since Defendants "had to prepare [the] motion to stay the case deadlines to protect its right to file a motion for summary judgment" and was "solely the result of Plaintiff's counsel's failure to comply with the Court's extended expert disclosure deadline of January 14, 2014."  Defs.' Reply at 4-6.

Notwithstanding Plaintiff's particularized objections to Defendants' fee request and Defendants' responses to the same, "[t]he Second Circuit has stated that a district court is not required to 'set forth item-by-item findings concerning what may be countless objections to individual billing items[.]'" *Reiter v. Metro. Transp. Auth. of State of N.Y.*, No. 01 CIV 2762G, 2007 WL 2775144, at *13 (S.D.N.Y. Sept. 25, 2007) (quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)); *see Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (recognizing that "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed "as a practical means of trimming fat from a fee application") (internal citation omitted); *Anello v. Anderson*, 191 F. Supp. 3d 262, 283 (W.D.N.Y. 2016) ("[T]he district court is not obligated to undertake a line-by-line review of [an] extensive fee application . . . In

that regard, [a] court has discretion to impose an across-the-board reduction if an attorney has

billed excessive, redundant, or unnecessary hours.") (internal citations omitted); *Gagasoules*, 296

F.R.D. at 111; *see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188

F. Supp. 3d 333, 344 (S.D.N.Y. 2016) ("'It is common practice in this Circuit to reduce a fee

award by an across-the-board percentage where a precise hour-for-hour reduction would be

unwieldy or potentially inaccurate.'") (quoting *Ass'n of Holocaust Victims for Restitution of*

*Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, No. 04–CV–3600, 2005 WL

3099592, at *7 (S.D.N.Y. Nov. 17, 2005), *reconsideration denied*, 2009 WL 3816976 (S.D.N.Y.

Nov. 10, 2009)).

Accordingly, the Court will not parse the contemporaneous billing records line-by-line

here.  Rather, if upon review of the contemporaneous time records the court "determines that the

number of hours expended was excessive, redundant or otherwise unnecessary, the court [in its

discretion] may . . . account for such over-billing in an across-the-board percentage deduction."

*Gagasoules*, 296 F.R.D. at 111 (quoting *Manzo v. Sovereign Motor Cars, Ltd.*, No. 08 Civ. 1229,

2010 WL 1930237, at *8 (E.D.N.Y. May 11, 2010)); *KGK Jewelry LLC v. ESDNetwork*, No. 11-

CV-9236, 2015 WL 2129703, at *2 (S.D.N.Y. May 6, 2015); *Palmer v. Cty. of Nassau*, 977 F.

Supp. 2d 161, 170 (E.D.N.Y. 2013) (same); *Spence v. Ellis*, No. CV 07-5249, 2012 WL

7660124, at *6 (E.D.N.Y. Dec. 19, 2012), *report and recommendation adopted*, 2013 WL

867533 (E.D.N.Y. Mar. 7, 2013) (same); *see also Congregation Rabbinical Coll. of Tartikov,*

*Inc.*, 188 F. Supp. 3d at 344 ([i]mpos[ing] a 30% reduction of the total number of hours for

which compensation is sought"); *KGK Jewelry LLC*, 2015 WL 2129703, at *3 (40% across-the-

board fee reduction imposed given the "straightforward nature of the sanctionable conduct");

*Saks Inc.v. Attachmate Corp.*, No. 14-CV-4902, 2015 WL 2358466, at *5 (imposing a 30%

across-the-board fee reduction given the "excessive" hours expended in light of the "relative simplicity of the underlying dispute and the brief period during which this dispute was ongoing").

Having conducted a thorough review of the time records, the Court finds that the 49.7 hours billed out by Attorney McCormick and Attorney Pensyl are excessive because:  (1) of the 49.7 hours claimed, Attorney McCormick, the assigned partner, billed out for a total of 27.6[2] hours or 55.5% of the total hours worked on these matters; (2) the invoices reflect that at least some of the work performed by Attorney McCormick could have been accomplished by either Attorney Pensyl or a less experienced associate; (3) block billing pervades the majority of the time entries making it difficult for the Court to determine whether the length of time spent on discrete tasks was otherwise reasonable; (4) excessive and/or duplicative time spent on certain tasks without sufficient explanation; and (5) the straightforward nature of the discovery issues giving rise to this fee application.  The Court will address each of these issues in turn.

With respect to the overall amount of time spent by Attorney McCormick on these non-dispositive issues, the Court points out that "[i]t is common, particularly with respect to discovery and other pretrial tasks, that associates shoulder much of the work, under the active supervision of partners, and that partners take lead roles as to projects for which their expertise adds value.  The ratio of associate to partner hours on pretrial work typically reflects more associate than partner hours—often significantly more." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 51 (S.D.N.Y. 2015).  Notwithstanding this general principle, a review of the time records in the instant case indicates that of the 49.7 hours claimed, Attorney McCormick

---

[2]     The Court points out that neither the invoices themselves nor the billing records summary set forth the aggregate amount of hours worked or the total fee requested by each *individual* attorney, leaving the Court to perform these calculations on its own.

billed a total of 27.6 hours while Attorney Pensyl — the senior associate assigned to the this matter — billed 22.1 hours.  *See* McCormick Decl., Exs. C, D.  In terms of percentages, Attorney McCormick billed for 55.5% of the work done while Attorney Pensyl billed for 44.4% of the total work.  Thus, strictly on a percentage basis, these figures establish a bill that is "lopsidedly partner-heavy," *Beastie Boys*, 112 F. Supp. 3d at 51, without an otherwise sufficient basis for this somewhat unequal division of labor.  Indeed, a review of the billing invoices shows that a number of tasks performed by Attorney McCormick could have been performed by less experienced counsel.  *See, e.g.*, McCormick Decl., Ex. C (December 23, 2013 invoice – "review of court order"); (January 9, 2014 invoice – "Preparation for hearing on plaintiff's motion to extend discovery deadline," Review of documents [regarding upcoming court conference,]" "continued review of documents in preparation for court conference," "Drafting of outline"); (February 13, 2014 invoice – "Review of transcript from December 23 conference"); (October 15, 2014 invoice –  "Review of court order,"); (November 26, 2014 invoice – "Continued review of deposition transcript," "Review of Court order," "Continued review of deposition transcript and expert report," "Drafting of notice to court supporting Abercrombie's motion for sanctions," "Continued drafting of notice to court . . . Final review and edits to the same").  Further, the content of the billing entries begs the question why two senior attorneys were primarily staffing this matter since the majority of tasks set forth in the billing invoices indicate that much of the prep work and document review could have been handled by a mid-level associate.  *See, e.g.*, *Microsoft Corp. v. Computer Care Ctr., Inc.*, No. 06–CV–1429, 2008 WL 4179653, at *15–16 (E.D.N.Y. Sept. 10, 2008) (significant reduction warranted due to, in part, the use of senior staff to perform work that could have been done by lower billers).

24

The Court also finds widespread use of "block-billing" in many of the time entries. Although not *per se* unreasonable, *see Hines v. City of Albany,* No. 14–2299, 2015 WL 3479820, at *3 (2d Cir. June 3, 2015) (summary order); *see also United States v. Sixty–One Thousand Nine Hundred Dollars & No Cents ($61,900.00)*, 856 F. Supp. 2d 484, 490 (E.D.N.Y. 2012) (declining to reject block billing on a *per se* basis), "[a]s a general rule, [the practice] is disfavored." *Marshall v. Deutsche Post DHL*, No. 13-CV-1471, 2015 WL 5560541, at *12 (E.D.N.Y. Sept. 21, 2015) (quoting *Beastie Boys,* 2015 WL 3823924, at *18).  Indeed, "[i]n the context of fee applications, 'block-billing makes it difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided.'" *Marshall*, 2015 WL 5560541, at *12 (quoting *Sheet Metal Workers' Nat. Pension Fund v. Coverex Corporate Risk Solutions*, No. 09–CV–0121, 2015 WL 3444896, at *12 (E.D.N.Y. May 28, 2015) (citations omitted) (collecting cases)); *see Molefi v. Oppenheimer Trust*, No. 03 CV 5631, 2007 WL 538547, at *7-8 (E.D.N.Y. Feb.15, 2007) (recognizing that "block billing renders it difficult to determine whether, and/or the extent to which, the work done by . . . attorneys is duplicative or unnecessary"); *Reiter*, 2007 WL 2775144, at *15; *Bobrow Palumbo Sales, Inc. v. Broan–Nutone, LLC*, 549 F. Supp. 2d 274, 283 (E.D.N.Y. 2008).  After reviewing the billing invoices, the Court finds that there were approximately 15 instances where block-billing was utilized.  *See* McCormick Decl., Ex. C.  In one instance in particular, Attorney McCormick combined a total of five discrete tasks encompassing 6.5 total hours of work.  *Id.* (November 26, 2014 invoice). In a separate instance, Attorney Pensyl combined four discrete tasks into a 2.1 hour entry.  *Id.* (March 31, 2014 invoice).  Entries such as these significantly "impedes [the] court's ability to assess whether the time expended on any given task was reasonable."  *Blake v. N.Y. City Health & Hosps. Corp.*, No. 14 CIV 3340, 2016 WL 6520067, at

*6 (S.D.N.Y. Nov. 3, 2016); *Synergy Aerospace Corp. v. LLFC Corp.*, No. 16 CV 2268, 2016
WL 5717582, at *4 (S.D.N.Y. Oct. 3, 2016) (same); *Sentry Ins. a Mut. Co. v. Brand Mangement
Inc.*, No. 10-CV-347, 2013 WL 2644675, at *4 (E.D.N.Y. June 12, 2013) (recognizing that
counsel "has engaged in impermissible block billing" and finding that "[c]ourts routinely reduce
the number of hours for this practice, as it impedes the Court's ability to properly assess whether
an attorney spent a reasonable amount of time on a particular task"); *see also Aiello v. Town of
Brookhaven*, No. 94 CV 2622, 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) ("[B]ecause
block billing renders it difficult to determine whether, and/or the extent to which, the work done
by ... attorneys is duplicative or unnecessary, courts apply percentage cuts where there is 'a
substantial amount' of block billing in a fee request.") (internal citation omitted).

The Court has also observed that some time entries appear to be excessive or duplicative.
*See Simmons v. New York City Dep't of Corr.*, No. 06 Civ. 5298, 2008 WL 4303474, at *6
(S.D.N.Y. Sept.16, 2008) ("the district court must account for duplicative or repetitive work to
ensure that the . . . fees represent only work that was necessary to the litigation and a cost
efficient use of co-counsel and outside counsel") (internal quotation marks and citation omitted);
*Empire State Carpenters Welfare v. Hanna Contracting, Inc.*, No. CV 10-0243, 2011 WL
845083, at *2 (E.D.N.Y. Feb. 8, 2011), *report and recommendation adopted sub nom. Empire
State Carpenters Welfare, Pension, Annuity, Apprenticeship, Charitable Trust, Labor Mgmt.
Cooperation & Scholarship Funds v. Hanna Contracting, Inc.*, , 2011 WL 846184 (E.D.N.Y.
Mar. 7, 2011).  For example, Attorney Pensyl billed a total of 8.2 hours for a "response to
plaintiff's motion for extension of time," without any further explanation as to why over eight
hours was necessary to complete such a task.  *See* McCormick Decl., Ex. C (November 14, 2013
and December 23, 2013 invoices).  Likewise, Attorney McCormick billed approximately nine

26

hours for "Preparation for court conference," which, without any further explanation, appears excessive on its face. *Id*. (January 9, 2014 invoice). Further, on January 29, 2014, both Attorney McCormick and Attorney Pensyl engaged in a review of the transcript from the December 23, 2013 court conference, without any explanation for the duplicated effort. *Id*. (February 13, 2014 invoice). Although there are other line items that appear excessive, counsels' reliance on block-billing, as discussed above, has made it difficult for the Court to determine the overall reasonableness — or lack thereof — of some of these entries.

Finally, although this fee application is the product of discovery delays resulting from Plaintiff's failure to adhere to this Court's prior directives concerning expert disclosure, a review of the billing records establishes that the work performed by Defendants in addressing these delays and non-compliance did not involve the analysis of novel or complex legal issues or otherwise implicate matters of first impression which might otherwise justify the hours expended. Rather, the work performed included routine, straightforward tasks related to common legal issues which in themselves do not justify the 49.7 hours of time expended by counsel. *See KGK Jewelry LLC*, 2015 WL 2129703, at *3 ("Although KGK properly highlights that these delays resulted in correspondence and conferences with the Court and opposing counsel, wasted deposition preparation, and the briefing of a sanctions motion, these events alone cannot explain the inordinate number of hours contributed to standard letter motions, legal research, and supporting memoranda; nor can it explain why three attorneys' time was necessary."); *Empire State Carpenters Welfare*, No. CV 10-0243, 2011 WL 845083, at *2 (finding billing to be "excessive" given that the case involved "a relatively straightforward ERISA claim"); *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 33 (N.D.N.Y. 2015) (finding that 12.7 hours to prepare opposition brief was "excessive due to the simple nature of the opposition,

which involved a straightforward legal argument. . .”); *see also Curves Int'l, Inc. v. Negron*, No. CV 11-2986, 2012 WL 4490542, at *7 (E.D.N.Y. Aug. 31, 2012), *report and recommendation adopted*, 2012 WL 4490553 (E.D.N.Y. Sept. 28, 2012) (recognizing that "hours spent litigating this matter [were] excessive   . . . [g]iven the straightforward nature of this case, [and the fact that] an attorney of lesser experience could have performed some or all of this work"); *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 363 (S.D.N.Y. 2010) ("The [56.5] hours expended on this relatively straightforward trademark action has convinced [the court] that a fifteen-percent reduction in the number of hours is warranted."); *K.L. v. Warwick Valley Cent. Sch. Dist.*, No. 12 CIV. 6313, 2013 WL 4766339, at *13 (S.D.N.Y. Sept. 5, 2013), *aff'd*, 584 F. App'x 17 (2d Cir. 2014) (finding that "over $14,000 in fees, reflecting over thirty hours of attorney work" was "not at all reasonable" where "[n]either the fee application nor the reply involved complex or unusual legal issues.  Moreover, a significant number of [the attorneys'] billing entries for the federal phase appear to involve time spent discussing and reviewing one another's work, which is excessive in light of the straightforward submissions ultimately filed."); *Suggs v. Crosslands Transp., Inc.*, No. 13-CV-6731, 2015 WL 1443221, at *12 (E.D.N.Y. Mar. 27, 2015) ( concluding that "34.8 hours litigating this case" was "excessive in light of the work completed and the complexity of the issues addressed in the plaintiff's pleadings and motion papers" and reducing hours sought by 30%).

Taking all of the above deficiencies into consideration and mindful that the Court has the "discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from [Defendants'] fee application," *Congregation Rabbinical Coll. of Tartikov, Inc.*, 188 F. Supp. 3d at 344, the Court finds that a 25% across-the-board reduction in the total hours claimed is warranted here.  *See Ass'n of Holocaust Victims for*

*Restitution of Artwork & Masterpieces*, 2005 WL 3099592, at *7 (applying 25% reduction to account for block billing, vagueness, and excess); *Concrete Flotation Sys., Inc. v. Tadco Const. Corp.*, No. 07-CV-319, 2010 WL 2539661, at *1 (E.D.N.Y. June 17, 2010) (adopting magistrate judge's recommendation that fees be reduced by 25% and reiterating that "it is common practice in the Second Circuit to reduce the fee award by an across-the-board percentage"); *Barbu*, 2015 WL 778325, at *5 (imposing a 33% reduction in total hours based upon vague entries and block billing); *Caban*, 2015 WL 7454601, at *8 (33% reduction in overall hours spent due to block billing, vague entries, and excessive time spent on certain routine tasks); *Gagasoules*, 296 F.R.D. at 112 (40% reduction due to vague and unrelated entries); *Ragin v. Harry Macklowe Real Estate Co.*, 870 F. Supp. 510, 521 (S.D.N.Y. 1994) (employing a 30% across-the-board percentage reduction in compensable hours for vague billing entries, lack of contemporaneous time records, and duplicative billing); *see also Lochren v. Cty. of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (concluding that district court's "decision to reduce [requested attorney's] fees by 25% was not an abuse of discretion.").

The Court sets forth below a chart containing the name of each attorney, the overall hours sought as well as the total rate charged based upon the requested hourly rates in the fee application. Defendants failed to provide these subtotals for each attorney and left that job to the Court.

| Attorney Name | Hourly Rate Requested | Total Hours Requested | Total Fee Requested |
|---|---|---|---|
| Thomas N. McCormick | $375.00 (2013) $400.00 (2014) | 27.6 | $10,723.00 |
| Tyler B. Pensyl | $285.00 (2013) $325.00 (2014) $350.00 (2015) | 22.1 | $6,943.50 |
| **Requested Total** | | **49.7** | **$17,666.50** |

The following chart reflects the 25% across-the-board reduction as well as the adjusted hourly rates arrived at by the Court:

| Attorney Name | Adjusted Hourly Rate | Original Hours Sought | Hours After 25% Reduction | Adjusted Total Fee |
|---|---|---|---|---|
| Thomas N. McCormick | $350.00 | 27.6 | 20.7 | $7,245.00 |
| Tyler B. Pensyl | $300.00 | 22.1 | 16.6 | $4,980.00 |
| **Adjusted Total:** | | | **37.3** | **$12,225.00** |

In light of the foregoing analysis, the Court respectfully recommends to Judge Seybert that Plaintiff be awarded a total of $12,225.00 in attorney's fees.

### 3. *Award of Costs*

In addition to a fee award, Defendants seek an award of the costs they expended in pursuing these matters.  These costs are as follows:  "(1) traveling to/from New York for the December 23, 2013 hearing on Plaintiffs untimely motion to extend case deadlines, and (2) pursuant to the Court's order (Doc. 23) paying half of the cost for a copy of the transcript from the December 23, 2013 hearing so that the Court could address Plaintiffs counsel's inaccurate contentions regarding what was said at the hearing."  McCormick Decl., ¶ 13.

As set forth in Section III.A.2. of this Report and Recommendation, although courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients," *Reichman*, 818 F.2d at 283; *Sheet Metal Workers Nat'l Pension Fund*, 2014 WL 2600095, at *11, it is incumbent on the party seeking reimbursement of its costs to provide the Court with adequate substantiation in the form of receipts and other documents not only showing such costs were incurred, but that they were paid.  *See Lee*, 2013 WL 4830951, at *5 ("[I]t is [ ] the requesting party's burden to support its application, and this means that the requested costs must be substantiated . . . A mere assertion that a certain cost was incurred, though, is insufficient, where such an assertion is made in a conclusory fashion in a

brief or bill of costs, without a supporting affidavit, declaration, or documentation."); *Volpe*, 2016 WL 6238525, at *10 ("The fee applicant bears the burden of adequately documenting and itemizing the costs requested.") (internal quotation omitted).  In addition, Local Civil Rule 54.1 states that "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,' " and "[b]ills for the costs claimed must be attached as exhibits." *Id*. (quoting *D.J. ex rel. Roberts*, 2012 WL 5431034, at *9.  The only situation in which this rule is somewhat relaxed is where reimbursement is sought for a filing fee.  In such cases, a court may take judicial notice of the fact that the fee was paid by virtue of entries in the docket.  *See Douyon*, 49 F. Supp. 3d at 352 ("The Court takes judicial notice of the $350 filing fee reflected on the docket."); *Lee*, 2013 WL 4830951, at *5 ("Court fees that are reflected on the Court's docket are sufficiently substantiated").

Here, Defendants have submitted the following receipts in support of their requests for costs:  (1) Delta Airlines in the amount of $905.80; (2) Hyatt Regency Hotel in the amount of 200.99;[3] (3) Hertz in the amount of $84.75; and (4)Transcriptions Plus in the amount of $81.12.[4] *See* McCormick Decl., Exs. F, G.  Despite having provided this substantiation, Plaintiff argues that Defendants should not be awarded travel costs since "Plaintiff should not be forced to pay for the travel expenses incurred by Defendants' attorneys due to the Defendants decision to retain an Ohio-based law firm, particularly when they also retained a local New York law firm, who easily could have appeared at the December 23, 2013 hearing. . . ."  Pl.'s Opp'n at 6.  In response, Defendants state that Plaintiff's position is "wrong" since "[s]everal courts in the

---

[3]     Although the bill totaled $208.99, counsel subtracted $8.00 for a beverage.  As such, Defendants request that $200.99 be reimbursed.  *See* McCormick Decl., Ex. F.

[4]     The total cost for transcription of the December 23, 2013 conference was $162.24, however, since the Court required that the cost be borne equally by both parties, Defendants seek reimbursement for half of the total cost.  *See* McCormick Decl., Ex. G.

Eastern District of New York have held that travel costs are recoverable." Defs.' Reply. at 8 (citing cases).

Generally, travel costs of the type sought in the instant case are "not automatically reimbursable, and numerous courts have denied travel and lodging costs when "it is not clear that out-of-state counsel's attendance was necessary at the proceedings." *Farberware Licensing Co. LLC v. Meyer Mktg. Co.*, No. 09 CIV. 2570, 2009 WL 5173787, at *6 (S.D.N.Y. Dec. 30, 2009), *aff'd*, 428 F. App'x 97 (2d Cir. 2011)); *see Motorola, Inc. v. Abeckaser*, No. 07-CV-3963, 2009 WL 2568529, at *7 (E.D.N.Y. Aug. 5, 2009), *report and recommendation adopted in part*, 2009 WL 2568526 (E.D.N.Y. Aug. 19, 2009) ("[w]hile the Court recognizes plaintiff's right to retain counsel of her own choice, she has failed to explain the need for out-of-state counsel when presumably, a local attorney with similar trial experience could be located") (quoting *Cartier Int'l B.V. v. Gorski*, Civ. No. 3:01 CV 01948, 2003 WL 25739624, at *3, 5 (D. Conn. Apr. 30, 2003)); *Imbeault v. Rick's Cabaret Int'l Inc.*, No. 08 CIV. 5458, 2009 WL 2482134, at *8 (S.D.N.Y. Aug. 13, 2009) (declining to award travel expenses related to retention of out-of-state counsel since a litigant "should not be rewarded for the decision to retain out-of-state counsel unless she persuasively establish[es] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result" and finding that "[t]here is no suggestion that qualified counsel in New York was unavailable or unlikely to have achieved similar success. Therefore, although the time spent traveling and in preparing pro hac vice motions became reasonably necessary to the litigation once Imbeault chose Minneapolis counsel, the time spent on these tasks must be excluded, because the hypothetical reasonable client who wishes to spend the least amount necessary to litigate the matter, with [her] own pocketbook in mind, instead of [her] opponents,' would have

retained local counsel) (internal citation omitted) (alterations in original); *see also Dzugas-Smith v. Southold Union Free Sch. Dist.*, No. 07-CV-3760, 2010 WL 3852003, at *3 (E.D.N.Y. Sept. 27, 2010) (declining to award travel costs where there was "no reason why Defendants should incur greater liability simply because Plaintiffs inexplicably retained a Buffalo-based attorney, when legions of competent Eastern District lawyers could have represented them."); *Concrete Flotation Sys., Inc.*, 2010 WL 2539771, at *7 ("If Bellingham wanted to retain Seattle counsel, with whom it had a longstanding relationship, and pay substantial travel-related costs for them to come to New York, such is Bellingham's prerogative.  However, the court questions whether a reasonable paying client would be willing to do so, and TADCO should not be responsible for Bellingham's having made such an election.").

Here, Defendants urge this Court to recommend that the travel costs incurred by Attorney McCormick associated with his attendance at the December 23, 2013 hearing be awarded since his "attendance at the [ ] hearing was necessary."  Defs.' Reply at 8 (emphasis omitted).  In support of this statement, Defendants aver that "Mr. McCormick is Abercrombie's lead counsel in this case, has handled all aspects of the case from the outset, and was the person best prepared to address the issues raised during the hearing." *Id*.  In addition, according to Defendants "[g]iven the significance of the issues [to be discussed at the hearing], a reasonable client would expect its lead counsel to attend the hearing.  Moreover, Mr. McCormick's attendance at the hearing resulted in Abercrombie paying less than if local counsel had to prepare for and attend the hearing because Messrs. McCormick and Pensyl have handled all aspects of this case and local counsel has had significantly less involvement." *Id*.

In light of prevailing case law (as set forth above), as well as the fact that Defendants did not provide the Court with affidavits or declarations from the client establishing out-of-state

counsel's need to be present at the hearing (especially since local counsel had been retained), the Court is not inclined to award Defendants travel costs associated with the December 23, 2013 appearance.  Indeed, although Defendants are free to secure counsel of their choosing for this action, this case was filed in the Eastern District of New York and there is no valid basis to presume that local counsel (either in the Southern or Eastern Districts) could not have competently handled this matter, including the issues involving sanctions which form the basis of this fee application.  *See Motorola, Inc.*, 2009 WL 2568529, at *7; *Dzugas-Smith*, 2010 WL 3852003, at *3; *Flotation Sys., Inc.*, 2010 WL 2539771, at *7.  Moreover, although Defendants assert that Attorney McCormick's attendance at the hearing resulted in less expense to Defendants than if local counsel had been required to prepare and attend the hearing, that assertion is unsupported.

In light of the above analysis, the Court respectfully recommends to Judge Seybert that (1) no travel costs be awarded and (2) Defendants be awarded $81.12 for their 50% share of the cost of the transcript from the December 23, 2013 conference.

## IV.   CONCLUSION

For the reasons set forth above, the Court respectfully recommends to Judge Seybert that:

(1)      Defendants be awarded $12,225.00 in attorneys' fees; and

(2)      Defendants be awarded $81.12 in costs incurred.

## V.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to**

**be sent to the Chambers of the Honorable Joanna Seybert, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections**.

Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


                                        **SO ORDERED**.

Dated: Central Islip, New York
        July 24, 2017


                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        U.S. Magistrate Judge

35