**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

CHRISTINA KIZER,                                         12-cv-5387 (JS)(AKT)

              Plaintiff,                   **DEFENDANTS' NOTICE OF**
                                                **MOTION FOR SUMMARY**
                                                **JUDGMENT**

v.

ABERCROMBIE & FITCH CO., ABERCROMBIE &
FITCH STORES, INC., ABERCROMBIE & FITCH
TRADING CO., d/b/a Abercrombie and Fitch,
Abercrombie, and Hollister and Ruehl,

              Defendants.
-----------------------------------------------------------------X

      PLEASE TAKE NOTICE that pursuant to Rule 56 of the Federal Rules of Civil

Procedure, and Local Rule 56.1, and upon (1) Defendants' Memorandum of Law in Support of

Their Motion for Summary Judgment; (2) Defendants' 56.1 Local Rule Statement of Undisputed

Facts; (3) the Declaration of Elisia Dickson; (4) the Declaration of Adam John; (5) the

Declaration of Chris Kulikowski; (5) the Declaration of Anthony Scorsese; (6) the Declaration of

Mark Patton; and (7) all the pleadings in this action, Defendants' Abercrombie & Fitch Co.,

Abercrombie & Fitch Stores, Inc., Abercrombie & Fitch Trade Co. d/b/a Abercrombie and Fitch,

Abercrombie, and Hollister and Ruehl's ("Defendants"), respectfully move this Court, before the

Honorable Joanna Seybert, United States District Judge, in the United States Courthouse located

at 100 Federal Plaza, Central Islip, New York, 11722, for an order granting the Defendants

summary judgment on all of Plaintiff's claims and dismissing Plaintiff's entire complaint with

prejudice on the grounds that there are no genuine issues as to any material fact and Defendants

are entitled to judgment as a matter of law.

Dated: January 29, 2018
      Columbus, Ohio

Respectfully submitted,

Attorneys for Defendants
VORYS, SATER, SEYMOUR AND PEASE LLP

/s/ Thomas N. McCormick
Thomas N. McCormick (Ohio Bar. No. 0075496)
    *Trial Attorney*
Tyler B. Pensyl (Ohio Bar. No. 0080649)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43216
Telephone: 614-464-6433
Facsimile: 614-719-4693
Email: tnmccormcik@vorys.com
      tbpensyl@vorys.com

BOND, SCHOENECK & KING, PLLC
Hilary McHugh (HM04954)
1010 Franklin Avenue, Suite 200
Garden City, NY 11530
Telephone: 516-267-6330
Facsimile: 516-267-6301
Email: hmchugh@bsk.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2018, I served the foregoing via regular U.S. mail and

e-mail upon the following:

AKIN LAW GROUP PLLC
Zafer A. Akin
Robert D. Salaman
45 Broadway, Suite 2650
New York, New York 10006

*Attorneys for Plaintiff*

/s/ Thomas N. McCormick
Thomas N. McCormick

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

CHRISTINA KIZER,                                                    12-cv-5387 (JS)(AKT)

                  Plaintiff,                              **MEMORANDUM OF LAW IN**
                                             **SUPPORT OF MOTION FOR**
v.                                                                 **SUMMARY   JUDGMENT**

ABERCROMBIE & FITCH CO., ABERCROMBIE &
FITCH STORES, INC., ABERCROMBIE & FITCH
TRADING CO., d/b/a Abercrombie and Fitch,
Abercrombie, and Hollister and Ruehl,

                  Defendants.
-----------------------------------------------------------------X

        Defendants Abercrombie & Fitch Co., Abercrombie & Fitch Stores, Inc., Abercrombie &

Fitch Trading Co., d/b/a Abercrombie and Fitch, Abercrombie, and Hollister and Ruehl[1]

("Abercrombie") hereby submit the following Memorandum of Law in Support of

Abercrombie's Motion for Summary Judgment.

Dated: Columbus, Ohio
       January 29, 2018             Attorneys for Defendants
                              VORYS, SATER, SEYMOUR AND PEASE LLP

                              /s/
                              Thomas N. McCormick (Ohio Bar. No. 0075496)
                                 *Trial Attorney*
                              Tyler B. Pensyl (Ohio Bar. No. 0080649)
                              VORYS, SATER, SEYMOUR AND PEASE LLP
                              52 East Gay Street
                              Columbus, Ohio  43215
                              Telephone:  614-464-6433
                              Facsimile:  614-719-4693
                              Email: tnmccormick@vorys.com
                                    tbpensyl@vorys.com

---

[1] Plaintiff incorrectly alleges that Abercrombie is d/b/a Ruehl.  Abercrombie no longer operates Ruehl.

BOND, SCHOENECK & KING, PLLC
Hilary McHugh (HM04954)
1010 Franklin Avenue, Suite 200
Garden City, NY  11530
Telephone:  (516) 267-6330
Facsimile:  (516) 267-6301
Email:  hmchugh@bsk.com

*Attorneys for Defendants Abercrombie & Fitch Co.,*
*Abercrombie & Fitch Stores, Inc., Abercrombie &*
*Fitch Trading Co., d/b/a Abercrombie & Fitch,*
*Abercrombie, and Hollister and Ruehl.*

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................v

I.   INTRODUCTION ........................................................................................1

II.  UNDISPUTED MATERIAL FACTS ...........................................................2

III. LAW AND ARGUMENT ............................................................................3

    A.   Kizer Has Withdrawn Her Title VII Claims (Counts IV, V, VI)............................3

    B.   Kizer's Discrimination Claims Fail as a Matter of Law (Counts I, IV, VII, and X)........................................................................................3

        1.   Kizer presents no evidence of race discrimination ......................................4

            a.   Parmentar did not call Kizer "ghetto."..............................5

            b.   Parmentar was not involved in the decision to promote Kizer to the Store Manager position................................6

            c.   There was a legitimate, non-discriminatory reason for Abercrombie not to promote Kizer .............................6

        2.   Kizer's *belated* Epic Hollister Store Claim is improper and baseless ........................................................................................8

            a.   Kizer's belated claim was never pled .............................8

            b.   Kizer's belated claim also lacks support.........................9

            c.   Kizer's belated claim fails because Parmentar was not involved .................................................................10

            d.   Abercrombie had a legitimate, non-discriminatory reason for not promoting Kizer to the Epic Hollister store...........................................................................10

        3.   Kizer's *second belated* Claim Related to a 2008 Promotion in Chicago Also Fails.....................................................................11

    C.   Kizer's Retaliation Claims Fail (Counts II, V, VIII, and XI) ..............12

    D.   Kizer's Claims for Malicious Violations Of § 1981, Title VII, the NYHRL, and the NYCL Contain No Factual Allegations (Counts III, VI, IX, and XII) ................................................................................14

iii

E.     Kizer's Wage and Hour Claims are without support and have been waived (Counts XIII, XIV, and XV) ....................................................................15

    1.    Abercrombie Properly Paid Kizer Pursuant to the Fluctuating Workweek ..............................................................................15

    2.    Kizer Settled and Released All Wage and Hour Claims Under the FLSA, NYLL, NYCRR ......................................................16

    3.    Kizer Cannot Bring FLSA Claims Against Abercrombie Arising Out of Her Employment in Illinois From 2009 to March 2010 ......................................................................................19

    4.    Kizer Cannot Bring a Claim for Failure to Pay Premium Wages Under The NYCRR §§ 142-2.2 and 142-2.4 ...............................19

    5.    Kizer's Claims for Willful Violations of the FLSA, NYMWA, and 12 NYCRR § 142 *et seq.* Fail as a Matter of Law ..........................................................................................20

F.     Abercrombie Is Entitled to Summary Judgment on Kizer's Intentional Infliction of Emotional Distress Claim (Count XVI) ........................21

IV.    CONCLUSION.........................................................................................................23

CERTIFICATE OF SERVICE ...........................................................................................24

## **TABLE OF AUTHORITIES**

**PAGE**

**Cases**

*Anderson v. Ikon Office Solutions, Inc.*, 38 A.D.3d 317 (N.Y. App. 2007) ................................. 15

*Ayers v. SGS Control Servs.*, 2007 US. Dist. LEXIS 76539 (S.D.N.Y. Oct. 9, 2007) ........................................................................................................................ 15, 16

*Aylain v. Town of Huntington*, 762 F. Supp. 2d 537 (E.D.N.Y. 2011) ........................................ 18

*Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998)............................................................ 9

*Café Spice SB, Inc.*, 911 F. Supp. 2d 213 ................................................................................... 22

*Chansamone v. IBEW Local 97*, 523 F.App'x 820 (2d Cir. 2013) ............................................... 5

*Clarke v. JPMorgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 33264 (S.D.N.Y. Mar. 26, 2010)............................................................................................................ 19, 21

*Curcio v. Roosevelt Union Free Sch. Dist*, 2012 U.S. Dist. LEXIS 120144 (E.D.N.Y. Aug. 22, 2012) ............................................................................................... 22

*Daniels v. Alvarado*, 2004 U.S. Dist. LEXIS 3893 (E.D.N.Y. Mar. 12, 2004)........................... 22

*Danzer v. Norden Sys.*, 151 F.3d 50 (2d Cir. 1998)................................................................. 6, 10

*EEOC v. J.B. Hunt Transport, Inc.*, 321 F.3d 69 (2d Cir. 2003) ................................................... 6

*Farias v. Instructional Sys.*, 259 F.3d 91 (2d Cir. 2001) ............................................................. 14

*Fleming v. MaxMara USA, Inc.*, 644 F.Supp.2d 247 (E.D.N.Y. 2009)............................. 11, 12, 14

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 268 F.D.R. 160 (E.D.N.Y. 2010) .......................................................................................................................... 19

*Glaser v. Fulton-Montgomery Cmty. Coll.*, 50 F.App'x 17 (2d Cir. 2002)............................. 8, 11

*Guan N. v. New York City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 2204 (S.D.N.Y. Jan 7, 2013).................................................................................................................... 3

*Hepler v. Abercrombie & Fitch Co, et al.*, Case No. 13-cv-2815 (E.D.N.Y.).............................. 17

*Hicks v. Rubin*, 6 F.App'x 70 (2d Cir. 2001) ......................................................................... 4, 12

*Houston v. Manheim-New York*, 475 F.App'x 776 (2d Cir. 2012) ................................................ 4

*J.B. Hunt Transport*, 321 F.3d 69 ......................................................................................... 10

*Janus v. Regalis Constr., Inc.*, 2012 U.S. Dist. LEXIS 127008 (E.D.N.Y. July 23, 2012) ........................................................................................................ 15, 20

*Jones v. Long Island R.R. Co.*, 1998 U.S. Dist. LEXIS 6298 (E.D.N.Y. May 1, 1998) ................................................................................................................. 11

*Kent v. GM Reg'l Pers. Ctr.-E. Region*, 179 F.Supp.2d 102 (W.D.N.Y. 2002) ........................... 14

*Lawson v. New York Billiards Corp.*, 331 F.Supp.2d 121 (E.D.N.Y. 2004) ............................... 22

*Malena v. Victoria's Secret Direct, LLC*, 2012 U.S. Dist. LEXIS 115900 (S.D.N.Y. Aug. 16, 2012) ................................................................................... 20

*McDonnell Douglas* ............................................................................................... 3, 4, 12

*McLean v. Metro. Jewish Geriatric Ctr.*, 2013 U.S. Dist. LEXIS 152377 (E.D.N.Y. Oct. 23, 2013) ..................................................................................... 4

*McLee v. Chrysler Corp.*, 109 F.3d 130 (2d Cir. 1997) .......................................................... 6, 10

*Minton v. Lenox Hill Hosp.*, 160 F.Supp.2d 687 (S.D.N.Y. 2001) ........................................... 22

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ...................................................... 11

*Pang, et al. v. Abercrombie & Fitch Stores, Inc., et al.*, Case No. 15-cv-1148 (E.D.N.Y.) ................................................................................................................. 17

*Pathania v. Metro. Museum of Art*, 2013 U.S. Dist. LEXIS 39580 (E.D.N.Y. Mar. 21, 2013) ............................................................................................................ 8, 11

*Rivera v. Sovereign Bank*, 976 F. Supp. 2d 270 (E.D.N.Y. 2013) .............................................. 18

*Robbins, et al. v. Abercrombie & Fitch Co., et al.*, Case No. 15-cv-6187-FPG-JWG (W.D.N.Y.) ................................................................................................ 17, 18

*Rubinow v. Boehringer Ingelheim Pharms., Inc.*, 496 F.App'x 117 (2d Cir. 2012) ..................... 22

*Scotto v. Almeas*, 143 F.3d 105 (2d Cir. 1998) .................................................................... 10

*Shah v. Wilco Sys., Inc.*, 806 N.Y.S.2d 553 (N.Y. App. 2005) ................................................. 12

*Song v. Ives Labs., Inc.*, 957 F.2d 1041 (2d Cir. 1992) ........................................................... 3

*Southwick Clothing, LLC v. GFT (USA) Corp.*, 2004 U.S. Dist. LEXIS 25336 (S.D.N.Y. Dec. 15, 2004) .................................................................................. 8, 11

*Stein v. Guardsmark*, 2013 U.S. Dist. LEXIS 103131 (S.D.N.Y. July 23, 2013) ........................ 16

*Tepperwien v. Entergy Nuclear Oper., Inc.*, 663 F.3d 556 (2d Cir. 2011) .................................... 14

*Vasquez v. Southside United Housing Dev. Fund Corp.*, 2009 U.S. Dist. LEXIS
    74480 (E.D.N.Y. Aug. 21, 2009).................................................................................... 4

*Wat v. Abercrombie & Fitch Stores, Inc., et al.*, Case No. 14-cv-5361 (E.D.N.Y.) .................... 17

*White v. Eastman Kodak Co.*, 368 F.App'x 200 (2d Cir. 2010) ............................................... 3, 12

*Wolf v. Time Warner*, 2013 U.S. App. LEXIS 25181 (2d Cir. Dec. 19, 2013) ............................. 3

*Workneh v. Pall Corp.*, 897 F.Supp.2d 121 (E.D.N.Y. 2012) ............................................. passim

*Zhengfang Liang v. Café Spice SB, Inc.*, 911 F. Supp. 2d 184 (E.D.N.Y. 2012) ........................ 21

**Statutes**

29 U.S.C. § 201 ............................................................................................................. 17

29 U.S.C. § 255 ............................................................................................................. 19

42 U.S.C. § 1981 ....................................................................................................... passim

42 U.S.C. § 2000e-5(b) ..................................................................................................... 3

Fair Labor Standards Act ........................................................................................... passim

New York City Law ................................................................................................... passim

New York Human Rights Law ............................................................................. 1, 3, 12, 14

New York Labor Law .......................................................................................... 15, 16, 17, 18

New York Labor Law § 160 ............................................................................................. 17

New York Labor Law § 191 ............................................................................................. 17

New York Labor Law § 650 ............................................................................................. 17

New York Minimum Wage Act............................................................................... 1, 2, 20

Title VII ............................................................................................................. 1, 3, 12, 14

**Rules**

Fed. R. Civ. P. 5(d) ........................................................................................................ 24

Loc. R. 56.1.................................................................................................................... 2

**Regulations**

12 New York Codes, Rules, and Regulations § 142 ................................................................ 1, 20

12 New York Codes, Rules, Regulations § 142.1 ......................................................................... 17

29 C.F.R. § 778.114 ........................................................................................................................ 16

29 C.F.R. § 778.114(a) ................................................................................................................... 15

New York Codes, Rules, and Regulations § 142-2.2 ........................................................ 1, 19, 20

New York Codes, Rules, and Regulations § 142-2.4 ........................................................ 1, 19, 20

## MEMORANDUM IN SUPPORT

## I.      INTRODUCTION

Plaintiff Christina Kizer ("Kizer") asserts claims against Abercrombie for race discrimination, retaliation, failure to pay overtime wages, and intentional infliction of emotional distress.[2]  Each claim fails as a matter of law.

Kizer's discrimination claims are based on her allegation that Abercrombie's Store Director for the Northeast region of the United States, William Chris Parmentar ("Parmentar"), discriminated against her by denying her a promotion to a Store Manager ("SM") position at one of Abercrombie's stores in Long Island, New York.  Kizer's claim is based entirely on inadmissible hearsay upon hearsay – namely, her allegation that a loss prevention agent told her (hearsay) that he heard from another employee (double hearsay) that Parmentar called her "ghetto."  Such hearsay is inadmissible and Kizer has introduced no admissible evidence to support her claim.

Moreover, undisputed evidence proves that Kizer's allegation is false.  First, Parmenter was not involved in the promotion decision.   Rather, that decision was made separately and independently by the District Manager ("DM"), Adam John ("John").  Second, the source of the hearsay statement, former Loss Prevention associate Anthony Scorsese, denies ever telling Kizer about the alleged comment *and* he further denies ever hearing about the comment from another employee.  There is simply no evidence that Parmentar discriminated against Kizer.

Kizer's retaliation claims are equally suspect because after she filed her complaint related to Parmentar's alleged comment, she suffered no adverse employment action—she was not

---

[2]  Kizer asserts sixteen causes of action against Abercrombie: (1) race discrimination under 42 U.S.C. § 1981; (2) retaliation under § 1981; (3) willful violation of § 1981; (4) race discrimination under Title VII; (5) retaliation under Title VII; (6) willful violation of Title VII; (7) race discrimination under the New York Human Rights Law ("NYHRL"); (8) retaliation under the NYHRL; (9) willful violation of the NYHRL; (10) race discrimination under the New York City Law ("NYCL"); (11) retaliation under the NYCL; (12) willful violation of the NYCL; (13) failure to pay wages and overtime in violation of the Fair Labor Standards Act ("FLSA"); (14) failure to pay wages and overtime in violation of the New York Minimum Wage Act ("NYMWA") and New York Codes, Rules, and Regulations ("NYCRR") §§ 142-2.2, 142-2.4; (15) willful violations of FLSA, NYMWA, and 12 NYCRR § 142 *et seq.*; and (16) intentional infliction of emotional distress.

terminated, demoted, or retaliated against in any way.  In fact, just the opposite occurred.  Shortly after she filed her complaint, another SM position opened on Long Island and *Kizer was promoted*. Because Kizer did not suffer any adverse employment action, her retaliation claims fail.

Similarly, Kizer's wage and hour claims should be dismissed.  These claims are based on her allegation that Abercrombie violated the FLSA, NYMWA, and NYCRR by paying her half of her hourly rate for overtime when she was a Manager in Training ("MIT") and Assistant Manager ("AM").  Kizer's claims fail for two reasons.  First, Kizer presents no evidence showing that Abercrombie's use of the fluctuating work week method violated any Federal, State, or local rule. Second, even if she could, these claims are barred because she previously settled all of her claims under the FLSA, NYMWA, and NYCRR as part of a class action settlement.  Pursuant to that settlement, Kizer released Abercrombie from any and all claims under the FLSA, NYMA, and NYCRR.  As such, Kizer's wage and hour claims are barred.

Finally, Kizer's intentional infliction of emotional distress claim fails as a matter of law because she has not presented any admissible evidence establishing that Abercrombie engaged in extreme or outrageous conduct.

For these reasons, and as discussed further below, Abercrombie's motion for summary judgment should be granted and all of Kizer's claims should be dismissed.

## II.    UNDISPUTED MATERIAL FACTS

Pursuant to Loc. R. 56.1, Abercrombie's Statement of Undisputed Material Facts ("Statement") and Plaintiff's Responsive Statement of Material Facts in Opposition to Defendants' Rule 56.1 Statement and Supplemental Statement of Disputed Material Facts ("Response") are being filed simultaneously with this Motion.  As set forth in the Statement and Response, there are no material facts in dispute.  Plaintiff has admitted each of the material facts set forth in

Abercrombie's Statement.   (*See* Response.)   Further, the Response fails to cite any admissible evidence to create any genuine issues of material fact on any of Kizer's claims.  (*Id.*)

## III.   LAW AND ARGUMENT

### A.  Kizer Has Withdrawn Her Title VII Claims (Counts IV, V, VI).

Kizer asserts three claims under Title VII: discrimination, retaliation, and willful violation. (Am. Compl. at ¶¶ 96–111.)   Each of these claims fails because Kizer did not file a charge of discrimination with the EEOC, and thereby, did not exhaust her administrative remedies.[3]

At the Pre-summary Judgment Conference on January 5, 2018, this Court encouraged Kizer to narrow the issues and reconsider each of her *sixteen* causes of action.   Kizer only agreed to dismiss these Title VII claims as acknowledged by email to defense counsel.  (*See* Email of 1/12/18 from R. Salaman to T. McCormick, attached as <u>Exhibit 1</u>.)

### B.  Kizer's Discrimination Claims Fail as a Matter of Law (Counts I, IV, VII, and X).

Counts I, IV, VII, and X assert race discrimination claims under Section 1981 (Count I), Title VII (Count IV), the NYHRL (Count VII), and the NYCL (Count X).   Each of these claims is analyzed under the *McDonnell Douglas* burden-shifting framework.  *Wolf v. Time Warner*, 2013 U.S. App. LEXIS 25181, at *2 (2d Cir. Dec. 19, 2013) ("We analyze [] discrimination claims under Title VII . . . under the three-step burden-shifting framework established in *McDonnell Douglas*"); *White v. Eastman Kodak Co.*, 368 F.App'x 200, 202 n.1 (2d Cir. 2010) ("The same elements constitute a claim for employment discrimination under 42 U.S.C. § 1981 as constitute a claim under Title VII."); *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1048 (2d Cir. 1992) ("the elements of a successful employment discrimination claim under Executive Law § 296 and Title VII are 'virtually identical'"); *Guan N. v. New York City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 2204, at *70

---

[3] Title VII requires a plaintiff to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory conduct.  42 U.S.C. § 2000e-5(b); *Workneh v. Pall Corp.*, 897 F.Supp.2d 121, 129-130 (E.D.N.Y. 2012). "The 300-day period serves as a statute of limitations, and claims regarding acts that occurred more than 300 days prior to the employee's initiation of administrative review are time-barred."  *Id.* at 130.

(S.D.N.Y. Jan 7, 2013) ("The elements of an employment discrimination claim under the State and City Human Rights Laws are the same as the elements of an employment discrimination claim under Title VII and § 1981.").

Under *McDonnell Douglas*, plaintiff must first establish a *prima facie* case of discrimination. *Hicks v. Rubin*, 6 F.App'x 70, 72 (2d Cir. 2001). Plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Id*. The burden of production then shifts to the employer to offer a legitimate, nondiscriminatory reason for the employment action. *Id.* Last, plaintiff has the burden of proving that the proffered reason is merely a pretext for discrimination. *Id.* The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *McLean v. Metro. Jewish Geriatric Ctr.*, 2013 U.S. Dist. LEXIS 152377, at *10 (E.D.N.Y. Oct. 23, 2013); *Vasquez v. Southside United Housing Dev. Fund Corp.*, 2009 U.S. Dist. LEXIS 74480, at *19 (E.D.N.Y. Aug. 21, 2009). To survive summary judgment, the plaintiff must point to actual evidence; she cannot rely on conclusory allegations or unsubstantiated speculation. *Houston v. Manheim-New York*, 475 F.App'x 776, 779 (2d Cir. 2012); *McLean*, 2013 U.S. Dist. LEXIS 152377, at *10.

### 1.  **Kizer presents no evidence of race discrimination.**

Kizer's race discrimination claim is based on her allegation that, in May 2012, Parmentar – who was a Store Director and not involved in any Store Manager level decisions – called her "ghetto" and denied her a promotion to a SM at the Hollister store in the Sunrise Mall in Massapequa, New York ("Sunrise Hollister"). (Statement at ¶¶ 19, 26; Response at ¶¶ 19, 26; Am. Compl. at ¶¶ 45, 48.) Kizer's claim is based entirely on her allegation that another employee, Loss Prevention associate Anthony Scorsese, told her that he heard from another Loss Prevention

associate, Cris Kulikowski, that Parmentar called Kizer "ghetto" during a conference call between Parmentar, John, Hoyle, and Kulikowski.  (Statement at ¶¶ 19, 26; Response at ¶¶ 19, 26; Kizer Dep. at 97–98, 101, 103–104.)

This claim fails because:  (1) there is no admissible evidence that Parmentar ever said anything discriminatory about her; (2) even if there was, the uncontroverted evidence proves that Parmentar was not involved in the promotion decision; and (3) there was a legitimate non-discriminatory reason for Abercrombie's decision to promote a different candidate.

### a. *Parmentar did not call Kizer "ghetto."*

There is absolutely no admissible evidence that Parmentar called Kizer "ghetto" or took any other discriminatory conduct.  Kizer's allegation is based solely on inadmissible hearsay (Kizer's alleged conversation with LP associate Scorsese), within more inadmissible hearsay (LP associate Scorsese's alleged conversation with LP associate Kulikowski).  (Statement at ¶¶ 19, 26; Response at ¶¶ 19, 26; Kizer Dep. at 97–98, 101, 103-104.)  It is axiomatic that "[a] party cannot rely on inadmissible hearsay in opposing a motion for summary judgment."  *Chansamone v. IBEW Local 97*, 523 F.App'x 820, 823 (2d Cir. 2013).  Thus, Kizer's double hearsay allegations cannot be considered in ruling on Abercrombie's motion for summary judgment.

Importantly, Kizer has not, and cannot, produce any other evidence to support her claim.  In fact, the admissible evidence proves that Parmentar never made the alleged statement.  The individuals that were allegedly a part of the purported telephone call where Parmentar allegedly made the statement have all denied the allegation.  (Statement at ¶¶ 27–33; Response at ¶¶ 27–33; John Decl. at ¶¶ 10-15; Kulikowski Decl. at ¶¶ 5, 7–9, 11; Scorsese Decl. at ¶¶ 6–10; John Dep. at 125; Parmentar Dep. at 113–114, 116, 118.)  Notably, this includes both of the individuals—Kulikowski and Scorsese—upon which Kizer's inadmissible hearsay testimony relies.  Thus, it is undisputed that Kizer's hearsay allegations are without merit.

5

### b. *Parmentar was not involved in the decision to promote Kizer to the Store Manager position.*

Kizer's discrimination claim also fails because the uncontroverted evidence shows that Parmentar was not involved in the SM promotion decision at the Sunrise Hollister store.  That decision was made by District Manager Adam John, **not** Parmentar.  (Statement at ¶ 23; Response at ¶ 23; John Decl. at ¶ 7; John Dep. at 107-08.)  In fact, John never discussed his decision with Parmentar.  (Statement at ¶ 25; Response at ¶ 25; John Decl. at ¶ 9; John Dep. at 120; Parmentar Dep. at 102-103, 104, 109.)

The Second Circuit has repeatedly held that an isolated comment or remark by an individual who is not the decisionmaker is not evidence of discrimination or a discriminatory motive.  *See, e.g.*, *Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998) (holding stray remark by employer without more does not constitute sufficient evidence to make out a case of employment discrimination); *McLee v. Chrysler Corp.*, 109 F.3d 130, 137 (2d Cir. 1997) (finding allegations of bias by a supervisor who was not consulted about a termination decision "provide no basis for imputing to [the decisionmaker] an invidious motivation for the discharge"); *EEOC v. J.B. Hunt Transport, Inc.*, 321 F.3d 69 (2d Cir. 2003) (finding comments made by people other than the ultimate hiring authorities were not sufficient to establish perceived disability discrimination).

Here, Parmentar was not involved in the promotion decision.  (Statement at ¶¶ 23, 25; Response at ¶¶ 23, 25; John Decl. at ¶¶ 7, 9; John Dep. at 107–08, 120; Parmentar Dep. at 102–103, 104, 109.)  Thus, Kizer's claims fail as a matter of law for this reason as well.

### c. *There was a legitimate, non-discriminatory reason for Abercrombie not to promote Kizer.*

Even if Kizer could state a prima face case for discrimination—which she cannot—her claims still fail because Abercrombie had a legitimate, nondiscriminatory reason for its decision. Namely, Cavan Valance was the more qualified candidate, whereas Kizer had performance issues.

John considered two candidates for the Sunrise Hollister SM position—Kizer and Valance. (Statement at ¶ 24; Response at ¶ 24; John Decl. at ¶ 6; John Dep. at 115, 119–20.)  John selected Valance because he was the best candidate for the position.  (Statement at ¶ 34; Response at ¶ 34; John Decl. at ¶ 7; John Dep. at 123.)  Valance had strong leadership skills, employees looked up to him, he had very strong recruiting results (both of MITs and part-time associates), and he built very good relationships with his peers and other managers.  (Statement at ¶ 35; Response at ¶ 25; John Dep. at 118–119; John Decl. at ¶ 7.)  Valance's strength in recruiting was particularly important because recruiting was an issue at the Sunrise Hollister store.  (Statement at ¶ 35; Response at ¶ 25; John Decl. at ¶ 7.)

Kizer's struggles with recruiting meant she was not a good fit for that specific position, and she had several performance issues that made Valance a more desirable candidate.  (Statement at ¶ 37; Response at ¶ 37.)  As set forth in Abercrombie's Statement of Facts, Kizer consistently received "needs improvement" ("NI") scores on her annual reviews in key areas such as recruiting, attitude, and leadership.  (Statement at ¶¶ 37–40; Response at ¶¶37–40; Kizer Dep. at 118–119, 294, Ex. 22.)  In addition, Kizer also received several poor performance notes and unsatisfactory performance notes ("UPNs") during her employment.  (Statement at ¶¶ 41–48; Response at ¶¶ 41–48; Kizer Dep. at 118–119, Ex. 24.)

Kizer does not, and cannot, contradict this evidence.  Valance was the best candidate for this specific position.  (Statement at ¶ 34; Response at ¶ 34; John Decl. at ¶ 7; John Dep. at 123.)  Race had nothing to do with his decision to promote Valance.[4]  (Statement at ¶¶ 34, 26; Response at ¶¶ 34, 36; John Decl. at ¶¶ 7–8; John Dep. at 123.)  As such, Abercrombie had a legitimate, nondiscriminatory reason for not promoting Kizer, and Kizer has not presented any evidence

---

[4] Kizer's Response denies that race had nothing to do with John's decision to promote Valance, but Kizer has presented no evidence that John considered Kizer's race when making the decision to promote Valance.  (*See generally* Kizer's Response and Supplemental Statement of Facts (citing no evidence of discrimination or discriminatory intent by John).)

establishing pretext.  Thus, for a third reason, Abercrombie is entitled to summary judgment.  *See Glaser v. Fulton-Montgomery Cmty. Coll.*, 50 F.App'x 17, 19 (2d Cir. 2002) (summary judgment for employer where plaintiff failed to proffer any evidence of discriminatory intent or that defendants' explanation for denying her promotion request was false); *Pathania v. Metro. Museum of Art*, 2013 U.S. Dist. LEXIS 39580, at *40 (E.D.N.Y. Mar. 21, 2013) (summary judgment for employer where presented legitimate, nondiscriminatory reason for plaintiff's termination); *Workneh v. Pall Corp.*, 897 F.Supp.2d 121, 131–132 (E.D.N.Y. 2012) (summary judgment for employer where plaintiff's performance reviews established he was not promoted because his inadequate job performance did not merit a promotion).

### 2.  Kizer's *belated* Epic Hollister Store Claim is improper and baseless.

Although Kizer's discrimination claim in her Amended Complaint is based solely on the allegation that she was denied the SM position at the Sunrise Mall in May 2012, she suggested during her deposition that she was discriminated against by Parmentar in November 2010 when she was not promoted to a SM at the Epic Hollister store on Fifth Avenue in Manhattan, New York—one of Abercrombie's flagship stores.  (Statement at ¶ 50; Response at ¶ 50; Kizer Dep. at 210–211, 333.)  This new claim should be summarily dismissed as it appears nowhere in her Amended Complaint, and even if it did, it fails as a matter of law.

### a.  Kizer's belated claim was never pled.

As discussed with the Court during the pre-summary judgment conference, Kizer's Amended Complaint alleges only that she was denied a promotion to the Sunrise Hollister store in May 2012.  Nowhere in any pleading, does she allege the unlawful denial of a promotion to the Epic Hollister store in November 2010.  For this reason alone, her claim must be dismissed.  *See Southwick Clothing, LLC v. GFT (USA) Corp.*, 2004 U.S. Dist. LEXIS 25336, at *20 (S.D.N.Y. Dec. 15, 2004) ("[F]actual allegations are judicial admissions that bind plaintiffs throughout the

courts of the litigation. . . .   A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations *should not be considered in resolving the motion*.") (emphasis added).[5]

### b. Kizer's belated claim also lacks support.

Kizer does not, and cannot, identify any position at the Epic Hollister store to which she was not promoted.  In other words, she has not presented any evidence that she suffered an adverse employment action.  A plaintiff's vague allegations that she was not promoted are insufficient to substantiate a failure to promote claim.  *Workneh*, 897 F.Supp.2d at 131.  Instead, the plaintiff must identify a specific position that was open to which she was not promoted.  *Id.* (citing *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)).

Here, Kizer has not identified any open SM position at the Epic Hollister store to which she was not promoted.  Instead, Kizer claims that when her former DM, Michelle Stefano quit in November 2010, Stefano told Kizer that she would get promoted to the Epic Hollister store on Fifth Avenue.  (Statement at ¶ 51; Response at ¶ 51; Kizer Dep. at 85, 225.)

This allegation is insufficient to create a genuine issue of fact.  First, it is inadmissible hearsay.  Second, Stefano was not the DM for the Epic Hollister store.  She would not have been aware of SM opening, was not responsible for filling SM openings, and did not have the authority to promote anyone at that store—particularly after she quit.  (Statement at ¶ 53; Response at ¶ 53; Dickson Decl. at ¶ 3.)  The DM responsible for promoting SMs to the Epic Hollister store did not tell Kizer she would be promoted and Kizer has not identified any open SM position at the Epic Hollister store.  (Statement at ¶ 57; Response at ¶ 57.)  Because Kizer has not identified any specific position to which she was not promoted, her vague claim fails as a matter of law.  *See Workneh*, 897 F.Supp.2d at 131 (E.D.N.Y. 2012).

---

[5] Kizer's refusal to dismiss this claim, despite questioning from the Court regarding her failure to allege such facts in her Amended Complaint is inexplicable.

### c. *Kizer's belated claim fails because Parmentar was not involved.*

Even if there was an open SM position at the Epic Hollister store, Kizer's claim fails for a third reason; namely, Parmentar had no ability to promote someone to the Epic Hollister store and he was not involved in any purported decision to deny Kizer such a promotion.

Parmentar was not responsible for making any decisions about who was going to be promoted to any open SM positions at the Epic Hollister store. (Statement at ¶¶ 54, 56; Response at ¶¶ 54, 56; Dickson Decl. at ¶¶ 7–8.) As set forth above, alleged discriminatory animus by an individual who is not the decisionmaker is not evidence of discrimination or a discriminatory motive. *See Danzer*, 151 F.3d at 56; *McLee*, 109 F.3d at 137; *J.B. Hunt Transport*, 321 F.3d 69. Here, the uncontroverted evidence shows Parmentar was not involved in any decision related to the Epic Hollister store. (Statement at ¶¶ 54, 56; Response at ¶¶ 54, 56; Dickson Decl. at ¶¶ 7–8.)

Moreover, Kizer has offered no evidence that Parmentar denied her such a promotion. She merely speculates that she thinks Parmentar denied her a yet to be identified position. (Statement at ¶ 52; Response at ¶ 52; Kizer Dep. at 210–11.) A party may not rely on conclusory allegations, conjecture, and speculation to defeat a motion for summary judgment. *Scotto v. Almeas*, 143 F.3d 105, 114 (2d Cir. 1998).

### d. *Abercrombie had a legitimate, non-discriminatory reason for not promoting Kizer to the Epic Hollister store.*

Even if the Court were to somehow find that Kizer has stated a prima facie case, her claim still fails because Abercrombie had a legitimate, nondiscriminatory reason for not promoting Kizer to the Epic Hollister store—one of its flagship stores. As set forth above, Kizer had a number of performance issues during her employment, including consistently receiving NI scores on her annual reviews and receiving several poor performance notes and UPNs. (Statement at ¶¶ 37–48; Response at ¶¶37-48; Kizer Dep. at 118–119, 294, Exs. 22, 24.) All of these factors would have prevented her from being promoted to a SM positions at one of one of Abercrombie's highly sought

10

after flagship stores (which are reserved for Abercrombie's top managers).  Thus, there is a legitimate, nondiscriminatory reason for why Kizer was not promoted to the Epic Hollister store. *See Glaser*, 50 F.App'x at 19; *Pathania*, 2013 U.S. Dist. LEXIS 394480, at *40; *Workneh*, 897 F.Supp.2d at 131–132.

### 3. Kizer's *second belated* Claim Related to a 2008 Promotion in Chicago Also Fails.

Although not alleged anywhere in her Amended Complaint, Kizer also suggested during her deposition that she was looked over for a promotion to SM in early 2008 because of her race while working for Abercrombie in Chicago.  (Statement ¶ 59; Response at ¶ 59; Kizer Dep. 47, 49, 98.) This claim also fails.

First, Kizer again failed to make any allegations in her amended complaint that she was allegedly denied a promotion in early 2008 because of her race.  An unpleaded claim cannot be considered by the Court and therefore must fail as a matter of law.  *See Southwick Clothing, LLC*, 2004 U.S. Dist. LEXIS 25336, at *20.

Second, the claim is barred by the statute of limitations.  Kizer's claims under § 1981 and New York law have a three year statute of limitations.  *Glaser*, 50 F.App'x at 19; *Fleming v. MaxMara USA, Inc.*, 644 F.Supp.2d 247, 269 (E.D.N.Y. 2009); *Jones v. Long Island R.R. Co.*, 1998 U.S. Dist. LEXIS 6298 (E.D.N.Y. May 1, 1998).  Here, Kizer did not file her complaint until September 24, 2012—more than four years after the alleged act.  (*See* Complaint, Doc. 1.)  Thus, her claim is time barred.[6]

---

[6] Kizer also cannot assert that her claim falls under the "continuing violation" exception.  Kizer quit her employment with Abercrombie in May 2008, so her employment has not been continuous since the time she alleges she was discriminated against in 2008.  (Kizer Dep. at 45.)  Furthermore, promotion decisions are discrete acts that do not trigger the continuing violation exception.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."); *Glaser*, 50 F.App'x at 19; *Workneh*, 897 F.Supp.2d at 130.  Thus, the continuing violation exception cannot be applied to Abercrombie's alleged failure to promote Kizer in 2008, and any claim related to that conduct is time-barred.  *See Glaser*, 50 F.App'x at 19.

Third, Kizer cannot state a *prima facie* case because she was not qualified for the position of SM in May 2008.  *Hicks*, 6 F.App'x at 72.  Here, Kizer admits that a bachelor's degree was a requirement for becoming a SM.  (Statement ¶ 63; Response at ¶ 63; Kizer Dep. at 16, 44–45, 66.) Kizer did not earn her bachelor's degree until May 2009.  (Statement at ¶ 64; Response at ¶ 64; Kizer Dep. at 16.)  Thus, she was not eligible for any SM position in May 2008.

Fourth, Kizer presents no evidence creating an inference that she was denied a promotion to SM because of her race.  A plaintiff's unsubstantiated allegations that her employer discriminated because of race do not create a material issue of fact.  *Workneh*, 897 F.Supp.2d at 132.  Here, Kizer presents no evidence establishing race as a motivating factor.  (*See generally* Response and Supplemental Statement of Facts.)  Instead, her claim is based on pure speculation.  Such conjecture cannot defeat Abercrombie's motion for summary judgment.[7]  *See Workneh*, 897 F.Supp.2d at 132 (summary judgment when where plaintiff's promotion claim was based on his personal opinion).

### C.  Kizer's Retaliation Claims Fail (Counts II, V, VIII, and XI).

Courts evaluate retaliation claims using the burden-shifting framework described in *McDonnell Douglas*.[8]  *White*, 368 F.App'x at 201.  To state a claim for retaliation in violation of Title VII, a plaintiff must first establish a prima facie case.  *Id.*  To establish a prima facie case, a plaintiff must present evidence sufficient to permit a rational trier of fact to find that (1) he engaged in an activity protected by Title VII, (2) the employer was aware of this activity, (3) the employer took adverse action against the employee, and (4) there is a causal connection between the protected activity and the adverse action.  *Id.* at 201–02.  The burden then shifts to the employer, to articulate

---

[7] Finally, to the extent the Court finds Kizer's claim does not fail for the aforementioned reasons, Kizer's claims under the NYHRL and the NYCL fail because the alleged discriminatory conduct occurred in Illinois.  The NYHRL and NYCL apply only to acts occurring within the boundaries of New York.  *Fleming*, 644 F.Supp.2d at 269; *Shah v. Wilco Sys., Inc.*, 806 N.Y.S.2d 553, 558 (N.Y. App. 2005).  Here, the alleged discriminatory conduct occurred in Illinois. Thus, Kizer cannot assert claims under the NYHRL and NYCL.

[8] The same analysis is followed for Title VII claims, § 1981, and Kizer's New York state and city law claims.  *White*, 368 F.App'x at 202 n.1; *Fleming*, 644 F.Supp.2d at 269.

a legitimate, non-retaliatory reason for the adverse action.  *Id.* at 202.  Last, "the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered" by the employer were a mere pretext for discrimination.  *Id.* at 202.

Here, Kizer's retaliation claim fails because she did not suffer any adverse employment action, but instead, she was promoted.  Specifically, Kizer filed an internal complaint against Parmentar when she was not promoted to the Sunrise SM position.  (Statement at ¶ 68; Response at ¶ 68; Kizer Dep. at 198.)  After receiving this complaint, Abercrombie thoroughly investigated the complaint and interviewed each of the individuals Kizer identified as being able to support her allegations, as well as Parmentar.  (Statement at ¶¶ 69–71; Response at ¶¶ 69–71; Kizer Dep. at 21, 242–43, 249, 254–55, 257, Ex. 21.)  All of the individuals denied the allegations, no evidence supported Kizer's claims, and Abercrombie determined that the allegation could not be substantiated. (Statement at ¶¶ 70–72; Response at ¶¶ 70–72; Kizer Dep. at 21.)

Kizer was not disciplined, suspended, demoted, terminated, nor did she suffer any other adverse employment action after making her complaint about Parmentar.  (Statement at ¶ 74; Kizer Dep. at 321–322, Ex. 13.)  Instead, in June 2012 – one month after she made her complaint about Parmentar—another SM position came open in the area and Kizer was promoted.  Kizer became the SM at the Hollister store in the Broadway Mall in Hicksville, New York ("Broadway Hollister").  (Statement at ¶¶ 75–76; Response at ¶¶75–76; Kizer Dep. at 113; John Decl. at ¶ 17; John Dep. at 135–136.)  The Broadway Hollister store was a better promotion for Kizer than Sunrise Hollister because it was a closer to her home in Brooklyn and an easier commute.[9]  (Statement ¶ 77; Response at ¶ 77; Kizer Dep. at 113–115; John Decl. at ¶ 18; John Dep. at 137–138.)

In short, Kizer did not suffer any adverse employment action as a result of the complaint she made about Parmentar.  To the contrary, she was promoted shortly after the complaint.  As such,

---

[9] Kizer readily admits that she did not care that she was not promoted to the Sunrise Hollister store.  (Statement at ¶ 77; Response at ¶ 77 Kizer Dep. at 113.)

Kizer has not stated a prima facie case for retaliation, and her claim fails as a matter of law. *Workneh*, 897 F.Supp.2d at 135 (summary judgment for employer on retaliation claim where plaintiff did not suffer a material adverse employment action); *Fleming*, 644 F.Supp.2d at 269-270 (summary judgment for employer on retaliation claim where plaintiff failed to show defendants took an employment action that disadvantaged her).

### D. Kizer's Claims for Malicious Violations Of § 1981, Title VII, the NYHRL, and the NYCL Contain No Factual Allegations (Counts III, VI, IX, and XII).

Kizer's claims asserting malicious violations of § 1981, Title VII, the NYHRL, and the NYCL do not contain any additional factual allegations. Rather, they appear to be pled for the purpose of attempting to obtain punitive damages. As set forth above, each of Kizer's claims for discrimination and retaliation fails as a matter of law. Abercrombie is therefore also entitled to summary judgment on Kizer's claims for malicious violations of these statutes. *See Kent v. GM Reg'l Pers. Ctr.-E. Region*, 179 F.Supp.2d 102, 118 (W.D.N.Y. 2002) (summary judgment for employer on punitive damages where it was granted summary judgment on liability).

Moreover, Abercrombie is entitled to summary judgment because Kizer has not shown any malicious conduct. A plaintiff is entitled to punitive damages in the employment discrimination context only if the employer "engaged in intentional discrimination" and did so "with malice or reckless indifference to the federally protected rights of an aggrieved individual." *Farias v. Instructional Sys.*, 259 F.3d 91, 101 (2d Cir. 2001). The plaintiff must show "a positive element of conscious wrongdoing." *Farias*, 259 F.3d at 101. Here, Kizer has presented no evidence that Abercrombie acted with malice or reckless indifference.

Finally, Kizer cannot maintain a punitive damages claim because Abercrombie had and enforced an antidiscrimination policy. "An employer can avoid liability for punitive damages by showing that it '[1] had an antidiscrimination policy and [2] made a good faith effort to enforce it.'" *Tepperwien v. Entergy Nuclear Oper., Inc.*, 663 F.3d 556, 573 (2d Cir. 2011). Here, the undisputed

14

evidence shows that Abercrombie had an antidiscrimination policy, including an internal complaint procedure to report discrimination, and that Abercrombie enforced its policy and undertook initiatives to promote diversity.  (Statement at ¶ 14; Response at ¶ 14; Kizer Dep. at 76–77, 78, Ex. 17 at 6-7; John Dep. at 80, 81; Parmentar Dep. at 71–73.)  Accordingly, Kizer's punitive damages claims fail and Abercrombie is entitled to summary judgment.

### E.  Kizer's Wage and Hour Claims are without support and have been waived (Counts XIII, XIV, and XV).

Kizer's claims under the FLSA, New York Labor Law, and New York City Law, allege a failure to pay overtime wages when she was an MIT and AM.  (Statement ¶ 78; Response at ¶ 78; Kizer Dep. at 110; Am. Compl. at ¶¶ 148, 151, 160.)  These claims lack evidentiary support, and even if they did not, they are barred pursuant to a prior class action settlement.

### 1.  Abercrombie Properly Paid Kizer Pursuant to the Fluctuating Workweek.

Under the FLSA, "the fluctuating workweek standard is recognized as an exception to the general requirement that employers pay overtime at 1½ times the employee's regular wage rate."[10] *Anderson v. Ikon Office Solutions, Inc.*, 38 A.D.3d 317, 317 (N.Y. App. 2007).  Under the fluctuating workweek, "employees can be 'paid a fixed weekly salary regardless of how many hours the employee may work in a given week.'"  *Ayers v. SGS Control Servs.*, 2007 US. Dist. LEXIS 76539, at *6–7 (S.D.N.Y. Oct. 9, 2007) (quoting 29 C.F.R. § 778.114(a)[11]).  The fluctuating workweek can be employed when five discrete criteria are satisfied:

---

[10] The New York labor statutes follow the fluctuating workweek provision of the FLSA.  *Janus v. Regalis Constr., Inc.*, 2012 U.S. Dist. LEXIS 127008, at *21 (E.D.N.Y. July 23, 2012) ("Applicable provisions of the NYLL essentially track the requirements of the FLSA."); *Anderson v. Ikon Office Solutions, Inc.*, 38 A.D.3d 317, 317 (N.Y. App. 2007) ("In assessing the viability of plaintiff's claim for overtime wages based on violation of 12 NYCRR § 142-2.2, the court considered whether defendant had established compliance with the federal 'fluctuating workweek' standard.").

[11] This section of the code provides:  "An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many.  Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is

> (1) the employee's hours fluctuate from week to week; (2) the employee receives a fixed weekly salary which remains the same regardless of the number of hours the employee works during the week; (3) the fixed amount is sufficient to provide compensation at a regular rate not less than the legal minimum wage; (4) the employer and the employee have a clear mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked; and (5) the employee receives a fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of forty (40) during the week.

*Ayers v. SGS Control Servs.*, 2007 US. Dist. LEXIS 76539, at *6–7 (S.D.N.Y. Oct. 9, 2007).

Here, all of the requirements for use of the fluctuating workweek were met. Namely, (1) Kizer's hours fluctuated week to week; (2) Kizer received a fixed weekly salary regardless of the number of hours she worked; (3) she was paid more than minimum wage; (4) Kizer signed an acknowledgment form expressing her understanding and agreement to this policy; and (5) Kizer was paid a fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours she worked in excess of forty (40) during the week. (Statement at ¶¶ 102–111; Response at ¶¶ 102–111; Kizer Dep. at 72, 145-47, 173, Ex. 16, 17 at 31; John Dep. at 25–26; Dickson Decl. at Ex. 1.)

Importantly, in her Response, Kizer has not challenged any of these undisputed facts, meaning she has presented no evidence to support her claim that Abercrombie violated any applicable wage and hour statute. Thus, her wage and hour claims fail as a matter of law and Abercrombie is entitled to summary judgment. *See Stein v. Guardsmark*, 2013 U.S. Dist. LEXIS 103131, at *36–37 (S.D.N.Y. July 23, 2013) (summary judgment for employer where all requirements of the fluctuating work week were met).

### 2. Kizer Settled and Released All Wage and Hour Claims Under the FLSA, NYLL, NYCRR.

In addition to failing as a matter of law, Kizer has settled **any and all** wage and hour claims against Abercrombie and released Abercrombie from liability for such claims. As set forth in

---

sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay." 29 C.F.R. 778.114.

Abercrombie's Statement of Facts, Kizer's wage and hour claims, including claims under the FLSA, NYLL, and NYCRR, were the subject of several Class and Collective Action Complaints.[12] Kizer was an *unnamed* class member in these class actions.  (Statement at ¶¶ 79–84; Response at ¶¶ 79–84.)  Ultimately, the matters were settled and a class wide settlement agreement was entered on October 8, 2015, and approved by the court on September 6, 2016 (the "Settlement Agreement").  (*See Robbins, et al. v. Abercrombie & Fitch Co., et al.*, Case No. 15-cv-6187-FPG-JWG (W.D.N.Y.); *see also* Statement at ¶¶ 85, 94; Response at ¶ 85; Robbins Docket at Doc. 46.)

Under the *Robbins* Settlement Agreement, the Settlement Class included all persons employed for one or more weeks in a MIT or AM position in New York from May 10, 2007 to September 30, 2014 ("Settlement Class").  (Statement ¶ 86; Robbins Docket at Doc. 5-6, ¶ 24.)  Kizer was a member of the Settlement Class because she worked in New York as an AM from March 2010 until June 2012.  (Statement ¶ 87; Kizer Dep. at 74, 113.)  Pursuant to the Settlement Agreement, the Settlement Class Members released Abercrombie from:

> **any and all claims**, obligations, demands, actions, rights, causes of action, and liabilities . . . of any form whatsoever arising under (i) federal law or (ii) the laws of the states of  . . . Illinois . . . New York . . . **before September 30, 2014**, whether known or unknown, unforeseen, unanticipated, unsuspected, or latent, which have been pled in the Second Amended Complaint or could have been pled based upon the factual allegations in the Second Amended Complaint . . . includ[ing] any and all claims for claims for wages or overtime and damages, penalties, liquidated damages, unpaid costs, restitution, penalties, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief arising under or resulting from such wage or overtime claims, whether based upon state, local, constitutional, statutory, or common law, including but not limited to claims under the **Fair Labor Standards Act,** 29 U.S.C. § 201 *et seq.* . . . 820 ILCS 105/1 *et seq.* and 820 ILCS 115/1 *et seq.* (Illinois) . . .  **NYLL § 160 et seq.,** § 191 *et seq.*, and § 650 *et seq.* and support regulations **12 NYCRR § 142.1 et seq. (New York)** . . .or any and all of their relevant implementing rules and regulations and interpretative guidelines, and all claims for penalties or restitution relating to or derivative of any or all of those laws.

---

[12] *Hepler v. Abercrombie & Fitch Co, et al.*, Case No. 13-cv-2815 (E.D.N.Y.); *Wat v. Abercrombie & Fitch Stores, Inc., et al.*, Case No. 14-cv-5361 (E.D.N.Y.); *Pang, et al. v. Abercrombie & Fitch Stores, Inc., et al.*, Case No. 15-cv-1148 (E.D.N.Y.); *Robbins, et al. v. Abercrombie & Fitch Co., et al.*, Case No. 15-cv-6187-FPG-JWG (W.D.N.Y.)).  (*See* Statement ¶¶ 79–84.)

(Statement ¶ 87; Kizer Dep. at 74, 113.) (emphasis added).

Kizer received notice of the settlement and did not opt out.  (Statement at ¶¶ 89–93; Response at ¶¶ 89–93; Patton Decl. at ¶¶ 6-10 Ex. 1.)  As part of the settlement, Kizer received a check in the amount of $5,821.67.  (Statement at ¶ 97; Response at ¶ 97; Patton Decl. at ¶ 10, Ex. 2.)  The check clearly and conspicuously stated above the endorsement line that by signing the check and accepting the funds in compromise of back wages allegedly due, Kizer agreed to "give up *any rights* [she] may have to bring suit under the claims released in the Settlement Agreement . . . ." (emphasis added).  (Statement at ¶ 98; Response at ¶ 98; Patton Decl. at Ex. 2 (emphasis added).) Kizer signed the check and cashed it.  (Statement at ¶ 99; Response at ¶ 99; Patton Decl. at ¶ 11, Ex. 3.)  This release specifically includes ***all*** of Kizer's wage and hour claims because she was promoted to SM, an exempt position, in June 2012.  (Statement at ¶ 76; Kizer Dep. at 113; John Decl. at ¶ 17; John Dep. at 135–136.)  Thus, Kizer has settled and released Abercrombie from the same wage and hour claims she now brings in this case—wage and hour claims under the FLSA, NYLL, and NYCRR.

Kizer's request to allow her wage and hour claims to continue are in direct contradiction with the Settlement Agreement approved in the *Robbins* case by the United States District Court for the Western District of New York.  Because Kizer has already released Abercrombie from these claims, her claims are barred and Abercrombie is entitled to summary judgment.  *See Rivera v. Sovereign Bank*, 976 F. Supp. 2d 270, 286 (E.D.N.Y. 2013) (granting defendant's motion for summary judgment because plaintiff had signed a release of all claims); *see also Aylain v. Town of Huntington*, 762 F. Supp. 2d 537, 543 (E.D.N.Y. 2011).

### 3. Kizer Cannot Bring FLSA Claims Against Abercrombie Arising Out of Her Employment in Illinois From 2009 to March 2010.

Kizer has suggested that her settlement with Abercrombie somehow did not cover her FLSA claims for the time she was employed in Illinois.[13]   Kizer is wrong.   The settlement agreement clearly states that, as a class member, Kizer released Abercrombie from **any and all** claims under the FLSA arising before September 30, 2014.   (Statement at ¶ 88; Response at ¶ 88.)   Further, the settlement check that Kizer cashed clearly stated that she released Abercrombie from **any** claims under the FLSA prior to September 30, 2014.   (Statement at ¶ 98; Response at ¶ 98.)   Kizer's purported FLSA claims arising out of her employment in Illinois occurred prior to September 30, 2014.   Thus, she has released Abercrombie from those claims.

In addition, any FLSA claims based on Kizer's employment in Illinois are barred by the statute of limitations.   The FLSA has a two-year statute of limitations.   29 U.S.C. § 255; *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 268 F.D.R. 160, 165 (E.D.N.Y. 2010) ("The FLSA has a two-year statute of limitations . . . .").   Kizer filed the complaint on September 24, 2012.   The last time Kizer worked in Illinois was March 2010—more than two years before she filed her complaint. (Statement at ¶¶ 100–01; Response at ¶¶ 100–01.)   Thus, her claims are time barred.[14]

### 4. Kizer Cannot Bring a Claim for Failure to Pay Premium Wages Under The NYCRR §§ 142-2.2 and 142-2.4.

Kizer also asserts a claim under NYCRR § 142-2.2 and 142-2.4 for failure to pay premium wages when she worked certain hours.   (*See* Am. Compl. at ¶¶ 161–164.)   Kizer has released

---

[13] Kizer has not asserted any wage and hour claims under Illinois law.

[14] Kizer also cannot contend that her FLSA claims have a three-year statute of limitations because Abercrombie's violations were willful because Kizer has not introduced any evidence that Abercrombie's violations were willful.   (*See* Supplemental Statement of Facts at ¶ 10 (citing no evidence.)   *Clarke v. JPMorgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 33264, at *38 (S.D.N.Y. Mar. 26, 2010) (summary judgment to employer where plaintiff did not raise any genuine issue about whether employer willfully violated the FLSA's overtime provisions).

Abercrombie from liability for this claim as part of the class action settlement. (Statement at ¶ 88; Response at ¶ 88 (releasing Abercrombie from any and all claims under the NYCRR).)

In addition, Kizer cannot maintain a claim under this statute because she made more than minimum wage. Under NYCRR § 142-2.2 and 142-2.4, an employee must receive a premium wage when she works a certain spread of hours. 12 NYCRR § 142-2.2, 2.4. New York law is clear, however, that "spread-of-hours pay should not be recovered by those earning more than the minimum wage." *Janus v. Regalis Constr., Inc.*, 2012 U.S. Dist. LEXIS 127008, at *35 (E.D.N.Y. July 23, 2012). *See also Malena v. Victoria's Secret Direct, LLC*, 2012 U.S. Dist. LEXIS 115900, at *49 (S.D.N.Y. Aug. 16, 2012) ("New York's spread-of-hours law does not apply to plaintiffs who earned substantially more than the minimum wage."). Here, Kizer admits that she made more than minimum wage at all times she was working for Abercrombie. (Statement at ¶ 110; Response at ¶ 100; Kizer Dep. 72.) As such, she cannot assert a claim for spread of hours pay under NYCRR § 142-2.2 and 142-2.4, and Abercrombie is entitled to summary judgment on her claim.

### 5. Kizer's Claims for Willful Violations of the FLSA, NYMWA, and 12 NYCRR § 142 *et seq.* Fail as a Matter of Law.

Kizer has also released Abercrombie from any liability for willful violations of the FLSA, NYMWA. (*See* Statement at ¶ 88; Response at ¶ 88 (releasing Abercrombie from any and all claims, including "claims for wages or overtime and damages, penalties, liquidated damages, unpaid costs, restitution, penalties, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief arising under or resulting from such wage or overtime claims").) Thus, this claim is also barred.

This claim also fails because it is based on the same facts as Kizer's other wage and hour claims. (*See* Am. Compl. at ¶¶ 168–172.) As set forth above, each of Kizer's claims under these statutes fails as a matter of law. Abercrombie is therefore entitled to summary judgment on Kizer's claims for malicious violations of these statutes.

Finally, Abercrombie is entitled to summary judgment because Kizer has not raised any genuine issue about whether Abercrombie's conduct was willful or malicious.  "An employer willfully violates the FLSA only if it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  *Clarke v. JPMorgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 33264, at *27 (S.D.N.Y. Mar. 26, 2010).  "Reckless disregard involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation."  *Id.* at *27.  Here, Kizer has presented no evidence that Abercrombie deliberately disregarded the federal and New York wage and hour statutes.  (*See* Supplemental Statement of Facts at ¶ 10 (citing no evidence).)  As such, Abercrombie is entitled to summary judgment for this reason as well.  *See id.* at *38 (summary judgment to employer where plaintiff did not raise any genuine issue about whether employer willfully violated the FLSA's overtime provisions).

## F.  Abercrombie Is Entitled to Summary Judgment on Kizer's Intentional Infliction of Emotional Distress Claim (Count XVI).

Kizer's last claim asserts Abercrombie's alleged conduct has caused her to suffer emotional distress.  "In order to assert a valid claim for intentional infliction of emotional distress under New York law, a plaintiff must demonstrate '(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress.'"  *Zhengfang Liang v. Café Spice SB, Inc.*, 911 F. Supp. 2d 184, 213 (E.D.N.Y. 2012).  "New York 'sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress.'  The conduct alleged must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'"  *Id.*

Kizer's claim fails because she has not presented any admissible evidence establishing that Abercrombie engaged in extreme and outrageous conduct.  The sole basis for Kizer's emotional distress claim is that Abercrombie discriminated against her when Parmentar allegedly called her

21

"ghetto." (Statement at ¶ 114; Response at ¶ 114.) As set forth above, there is no evidence supporting these allegations. As such, Kizer has failed to present any evidence of extreme and outrageous conduct and her claim fails. *See Rubinow v. Boehringer Ingelheim Pharms., Inc.*, 496 F.App'x 117, 118 (2d Cir. 2012) (summary judgment for employer on emotional distress claim where employer was granted summary judgment on discrimination claims); *Minton v. Lenox Hill Hosp.*, 160 F.Supp.2d 687, 699 (S.D.N.Y. 2001) (plaintiff could not maintain emotional distress claim where employer granted summary judgment on underlying discrimination claims).

Furthermore, even if Kizer could show that Abercrombie discriminated against her, her claim still fails. New York courts have rarely allowed a plaintiff to maintain an intentional infliction of emotional distress claim based upon alleged discrimination in employment. *Café Spice SB, Inc.*, 911 F. Supp. 2d 213; *Curcio v. Roosevelt Union Free Sch. Dist*, 2012 U.S. Dist. LEXIS 120144, at *62 (E.D.N.Y. Aug. 22, 2012) ("The New York Court of Appeals has rarely allowed a plaintiff to sustain a claim for intentional infliction of emotional distress in an employment discrimination case."). Likewise, the use of racial slurs or insults is insufficient to support an intentional infliction of emotional distress claim. *Curcio v. Roosevelt Union Free Sch. Dist*, 2012 U.S. Dist. LEXIS 120144, at *62 (E.D.N.Y. Aug. 22, 2012) ("[T]he use of religious, ethnic or racial aspersions to denigrate a person ... is not sufficiently egregious conduct to sustain [an intentional infliction of emotional distress claim]."). Accordingly, "courts have repeatedly dismissed intentional infliction of emotional distress claims arising solely from a defendant's use of racial insults." *See Curcio v. Roosevelt Union Free Sch. Dist*, 2012 U.S. Dist. LEXIS 120144, at *62 (E.D.N.Y. Aug. 22, 2012); *Lawson v. New York Billiards Corp*., 331 F.Supp.2d 121, 133 (E.D.N.Y. 2004) (dismissing IIED claim in which plaintiff alleged racist remarks, threats, and a conspiracy to have him arrested); *Daniels v. Alvarado*, 2004 U.S. Dist. LEXIS 3893 (E.D.N.Y. Mar. 12, 2004) ("Racial slurs on their own do not constitute conduct so 'extreme and outrageous' in nature as to

sustain a claim for intentional infliction of emotional distress.").  Thus, Kizer's allegations that Parmentar called her "ghetto" and Abercrombie discriminated against her are insufficient as a matter of law to support her emotional distress claim.  Accordingly, Abercrombie is entitled to summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, Abercrombie should be granted summary judgment on each of Plaintiff's claims.


Dated: Columbus, Ohio
      January 29, 2018                  Attorneys for Defendants
                                    VORYS, SATER, SEYMOUR AND PEASE LLP

                                    /s/*Thomas N. McCormick*
                                    Thomas N. McCormick (Ohio Bar. No. 0075496)
                                      *Trial Attorney*
                                    Tyler B. Pensyl (Ohio Bar. No. 0080649)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio  43215
Telephone:  614-464-6433
Facsimile:  614-719-4693
Email: tnmccormick@vorys.com
      tbpensyl@vorys.com

BOND, SCHOENECK & KING, PLLC
Hilary McHugh (HM04954)
1010 Franklin Avenue, Suite 200
Garden City, NY  11530
Telephone: (516) 267-6330
Facsimile:  (516) 267-6301
Email:  hmchugh@bsk.com

*Attorneys for Defendants Abercrombie & Fitch Co., Abercrombie & Fitch Stores, Inc., Abercrombie & Fitch Trading Co., d/b/a Abercrombie & Fitch, Abercrombie, and Hollister and Ruehl.*

## <u>CERTIFICATE OF SERVICE</u>

      Pursuant to Federal Rule of Civil Procedure 5(d), I hereby certify that on January 29 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record who are deemed to have consented to electronic service.

                /s/*Thomas N. McCormick*
                Thomas N. McCormick